THE BOARD OF COMMISSIONERS OF KNOX COUNTY, PLAINTIFFS IN ERROR, *v.* WILLIAM H. ASPINWALL, JOSEPH W. ALSOP, HENRY CHANCEY, CHARLES GOULD, AND SAMUEL L. M. BARLOW.

Where the commissioners of a county have authority by statute to issue bonds, and are required to levy a tax to pay the interest coupons as they become due, and, having issued such bonds, they neglect or refuse to assess the tax or pay the interest, a writ of mandamus is the proper legal remedy.

The Circuit Courts of the United States have authority to issue such writ of mandamus against the commissioners, where it is necessary, as a remedy for suitors in such court.

It is not a sufficient reason for setting aside a peremptory mandamus, that a previous alternative writ had not issued.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Indiana.

The case is stated in the opinion of the court.

It was argued by *Mr. Porter* for the plaintiffs in error, and *Mr. Vinton* upon a brief filed by himself, and also one by *Mr. Judah*, for the defendants.

The principal point in controversy was the power of the Circuit Court, under the 14th section of the Judiciary act, to issue a writ of mandamus in this case. Upon this subject, a portion of the arguments of the counsel can be given.

*Mr. Porter* said:

If the Circuit Court of the United States has power to issue a writ of mandamus to enforce the payment of a judgment at law, it derives that power from the provisions of the 14th section of the Judiciary act of 1789.

It is not pretended that there is any other foundation for it.

The words of the section are: "That all the before-mentioned courts of the United States shall have power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law."

I maintain that the "exercise of jurisdiction," in any sense in which the writ of mandamus could be called in aid of it, was complete in this case upon the rendition of final judgment; that to enforce the payment of that judgment by means of this extraordinary writ would not be "agreeable to the principles and usages of law." Passing over the fact which appears in the record, that an execution was issued, and a levy actually made, which the party voluntarily abandoned to resort to his writ of mandamus; and conceding, for the sake of the argument, what the opposing counsel assumes in his brief, that "no execution can be levied on the general property and effects of the county," I affirm that this state of facts simply presents the ordinary case of a party holding a debt of record which cannot be realized by process of execution. And I deny that it follows that a writ of mandamus in such a case is, in any just sense, "necessary for the exercise of jurisdiction," or "agreeable to the principles and usages of law."

The writ of mandamus is the appropriate remedy to enforce the performance of some duty enjoined by law, where there is no other adequate remedy.

The duty imposed by law on the board of commissioners of the county of Knox, now sought to be enforced, was a duty to. levy a tax for the payment of interest coupons, not judgments of a court of law.

The holders of those coupons had a right to go into the State courts, and enforce the levying of the tax for their payment, by mandamus; but they elected a different remedy.

They chose to sue in the ordinary form, in the Circuit Court, merged their coupons in a judgment at law, and must rely for the collection of that judgment on the ordinary and usual writs in use for that purpose.

If, upon the failure of these, they may resort to the writ of mandamus to compel the payment of their judgment, on the ground that such a writ is necessary to the exercise of jurisdiction, why may it not be used in every case; to compel the payment of judgments which cannot be collected in the usual way? The words of the statute, then, instead of being understood as words restraining the power to issue the writ in aid and furtherance of ordinary remedies only, will become a grant to the Circuit Courts of the power to employ a new and formidable process in all cases where the common writs of execution fail.

The defendants in error rely on the case of Wayman *v.* Southard to show that the words "necessary for the exercise of jurisdiction" apply to proceedings after judgment, as well as before.

The question decided in that case will appear from the certificate at the close of the opinion, which is as follows:

"*Certificate.*—This cause came on to be heard on the questions certified from the United States court for the seventh circuit and district of Kentucky, and was argued by counsel. On consideration whereof, this court is of opinion that the statutes of Kentucky in relation to executions, which are referred to in the questions certified to this court, on a division of opinion of the said judges of the said Circuit Court, are not. applicable to executions which issue on judgments rendered by the courts of the United States; which is directed to be certified to the said Circuit Court."

10 Wheaton, 50.

That part of the opinion of the court which relates to the question now under consideration is as follows:

"The words of the 14th section are understood by the court to comprehend executions. An execution is a writ which is certainly 'agreeable to the principles and usages of law.'

"There is no reason for supposing that the general term 'writs' is restrained, by the words 'which may be necessary for the exercise of their respective jurisdictions,' to original process, or to process anterior to judgments. The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process subsequent to the judgment, in which jurisdiction is to be exercised. It is, therefore, no unreasonable extension of the words of the act to suppose an execution necessary for the exercise of jurisdiction. Were it even true that jurisdiction could technically be said to terminate with the judgment, an execution would be a writ necessary for the perfection of that which was previously done, and would consequently be necessary to the beneficial exercise of jurisdiction. If any doubt could exist on this subject, the 18th section, which treats of the authority of the court over its executions as actually existing, certainly implies that the power to issue them had been granted in the 14th section. The same implication is afforded by the 24th and 25th sections, both of which proceed on the idea that the power to issue writs of execution was in possession of the courts. So, too, the process act, which was depending at the same time with the Judiciary act, prescribes the forms of executions, but does not give a power to issue them. On the clearest principles of just construction, then, the 14th section of the Judiciary act must be understood as giving to the courts of the Union, respectively, a power to issue executions on their judgments."

10 Wheaton, 23, 24:

Now, I submit that all this is inapplicable to the case at bar.

The learned counsel for the defendants says, in his brief, after quoting from the opinion of the court in Wayman *v.* Southard, "all that is said above about writs of execution

must be equally applicable to writs of mandamus, when they are necessary to carry a judgment into effect."

Granting this, it must appear that in the case at bar a writ of mandamus was necessary to carry the judgment into effect

That is the touchstone proposed by the counsel for the defendants; and tried by that very test, the case is, in my opinion, against them.

. A case might be imagined, doubtless, where a writ of mandamus would be necessary to the "beneficial exercise of jurisdiction," and to carry the judgment into effect. Suppose, for instance, that an execution were lodged in the hands of the sheriff, and that he were to neglect or refuse to serve it. In such a case a mandamus might properly be invoked in aid of the jurisdiction, though more summary proceedings would probably be preferred. But in this-case no obstruction is put in the way of the ordinary writs, which, "agreeably to the principles and usages of law," may issue upon judgments at law. All the remedies which any such judgment ordinarily supplies are open to the parties in this case. But they are said to be inadequate; yet it does not appear that ample property could not be found whereon to levy. The parties then propose to seek another remedy, not a means of carrying into effect the judgment already obtained, but a separate and independent proceeding, in which they must begin *de novo*, and conduct a new suit through the several stages of pleadings, hearing, and final judgment. The judgment already obtained is not the basis of this new proceeding. The claim on which that judgment was obtained is, it is a proceeding for enforcing the claim by a separate and independent action, not for enforcing the judgment. The object of the proceeding is, to create a fund out of which the claim may be paid. Is there any writ or proceeding in the same case by which a fund may be created for the payment of a judgment at law, "agreeably to the principles and usages of law?"

The proceedings in mandamus constitute a separate suit in general. So say the authorities. 6th Bac. Ab., 453.

*Mr. Vinton* said:

The Judiciary act of 1789, after having conferred on the several courts of the United States their respective jurisdictions over the matters subjected to their cognizance, and upon which they may pronounce judgments, proceeds in the 14th section to provide for the exercise of those jurisdictions— that is to say, for carrying them into execution, in the language of the above-recited clause of the Constitution, and, as I have already said, into full and complete execution. For that purpose it enacts "that all the before-mentioned courts of the United States, (the Circuit Court being one of them,) shall have power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the principles and usages of law." 1 Statutes at Large, 81.

Under this section, the power of the Circuit Courts and of all other courts of the United States is limited to the issue of writs for the sole purpose or object of exercising their jurisdictions; but for the accomplishment of that object and purpose, the power is given to issue "all writs," whether of mandamus or any other writs not specially provided for by statute, which may be necessary, and are agreeable to the principles and usages of law. For the accomplishment of that purpose no language could be more comprehensive.

A construction was given to this 14th section in respect to the extent of the power conferred by it on the Circuit Courts to issue writs in the above-mentioned case of Wayman *v.* Southard, 6 Pet. Cond. Rep., 4.

In that case, it was insisted by one of the parties, that the power conferred by that section was limited to process anterior to the rendition of the judgment, and that when judgment was rendered the jurisdiction of the court was exercised and exhausted; and that, consequently, the Circuit Courts could not, by virtue of that section, issue executions on their judgments.

The court, after reciting the words of the 14th section, answer this objection by saying, "the words of the fourteenth section

are understood by the court to comprehend executions. An execution is a writ which is certainly agreeable to the principles and usages of law. There is no reason for supposing that the general term, 'writs,' is restrained, by the words 'which may be necessary for the exercise of their respective jurisdictions,' to original process, or to process anterior to judgments. The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process subsequent to the judgment, in which jurisdiction is to be exercised. It is, therefore, no unreasonable extension of the words of the act to suppose an execution necessary for the exercise of jurisdiction." 6 Pet. Cond. Rep., 4, 5.

All that is said above about writs of execution must be equally applicable to writs of mandamus, when they are necessary to carry a judgment into effect.

This decision establishes two propositions, which have an important bearing on the case now before the court.

1st. That the jurisdiction of the Circuit Court over a case continues until its judgment is satisfied.

2d. That it has power to issue such writs, both before and after judgment, as may be necessary for the exercise of its jurisdiction, and are agreeable to the principles and usages of law.

From these propositions, it would seem to follow, as a necessary corollary, that if in any case the writ of mandamus was necessary for the satisfaction of the judgment, and the case itself was one where, by the principles and usages of law, the writ would issue, then the 14th section confers on the court power to issue it for that special purpose.

The question of the extent of power given to the Circuit Courts by this 14th section, to issue writs of mandamus, first came up for decision in this court, in the case of McIntire *v.* Wood, 2 Pet. Cond. Rep., 588.

*Mr. Vinton* then proceeded to comment on several subsequent decisions of this court.

Mr. Justice GRIER delivered the opinion of the court.

The plaintiffs in error were defendants in a suit by Aspinwall and others, in which a judgment was recovered for interest coupons on bonds issued by the corporation. The cause was removed to this court, and may be found reported in 21 Howard, 539. The judgment of the Circuit Court was affirmed, and the record remitted.

In order to enforce the execution of this judgment, the plaintiffs moved for a mandamus to the commissioners, to compel them to levy a tax to satisfy the judgment. The record shows that the board of commissioners appeared in the Circuit Court and resisted the motion, on several grounds, but chiefly that the court had no jurisdiction to issue a mandamus in this case.

The act of Assembly of Indiana, which authorized the issue of the bonds and coupons which were the subject of the litigation, may be found in the former report of the case. (21 How., 542.)

It appears that by the 3d section of this act it is made the duty of the commissioners, for the purpose of paying the interest due on the bonds, "at the levying of the county taxes for each year, to assess a special tax, sufficient to realize the amount of the interest to be paid for the year."

This the commissioners had not done, and refused to do so, on notice and request of the defendants in error.

Now, it is not alleged nor pretended but that, if this judgment had been obtained against the corporation in a State court, the remedy now sought could have been obtained; for it must be admitted, that, according to the well-established principles and usage of the common law, the writ of mandamus is a remedy to compel any person, corporation, public functionary, or tribunal, to perform some duty required by law, where the party seeking relief has no other legal remedy, and the duty sought to be enforced is clear and indisputable. That this case comes completely within the category- is toc clear for argument; for, even assuming that a general law of Indiana permits the public property of the county to be levied

on and sold for the ordinary indebtedness of the county, it is clear that the bonds and coupons issued under the special provisions of this act were not left to this uncertain and insufficient remedy. The act provides a special fund for the payment of these obligations, on the faith and credit of which they were negotiated. It is especially incorporated into the contract, that this corporation shall assess a tax for the special purpose of paying the interest on these coupons. If the commissioners either neglect or refuse to perform this plain duty, imposed on them by law, the only remedy which the injured party can have for such refusal or neglect is the writ of mandamus.

Why should not the Circuit Court of the United States be competent to give to suitors this only adequate remedy?

By the common law, the writ of mandamus is granted by the King's Bench, in virtue of its prerogative and supervisory power over inferior courts. The courts of the United States cannot issue this writ by virtue of any supervisory power at common law over inferior State tribunals. They can derive it only from the Constitution and laws of the United States.

The jurisdiction of these courts is, by the Constitution, extended to " controversies between citizens of different States." Congress has authority to make all laws which shall be necessary and proper for carrying this jurisdiction into effect. The jurisdiction of the court to give the judgment in this case is not disputed; nor can it be denied, that by the Constitution, Congress has the power to make laws necessary for carrying into execution all its judgments. (See Wayman v. Southard, 10 Wheaton, 22.) Has it done so?

By the 14th section of the Judiciary act of 1789, it is enacted " that courts of the United States shall have power to issue writs of *scire facias, habeas corpus, and all other writs* not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the principles of the common law."

Now, the "jurisdiction" is not disputed, and it is "*necessary*" to an efficient exercise of this jurisdiction that the court

have authority to compel the exercise of a ministerial duty by the corporation, which by law they are bound to perform, and by the performance of which alone the plaintiff's remedy can be effected. The fund to pay this judgment, by the face of the contract, is a special tax laid and to be collected by defendants. They refuse to perform a plain duty. There is no other writ which can afford the party a remedy, which the court is bound to afford, if within its constitutional powers, except that afforded by this writ of mandamus.

It is "agreeable to the principles of the common law," and, consequently, within the category as defined by the statute.

A court of equity is sometimes resorted to as ancillary to a court of law in obtaining satisfaction of its judgments. But no court, having proper jurisdiction and process to compel the satisfaction of its own judgments, can be justified in turning its suitors over to another tribunal to obtain justice. It is no objection, therefore, to the use of this remedy, that the party might possibly obtain another by commencing a new litigation in another tribunal.

We are of opinion, therefore, that the Circuit Court had authority to issue the writ of mandamus in this case.

It is no reason for setting it aside, that a previous alternative writ had not issued. The notices served on the commissioners gave them every opportunity of defence that could have been obtained by an alternative mandamus. There was no dispute about facts which could affect the decision. The court gave them an opportunity to comply with the demand of the plaintiffs; their excuse for not doing so was, palpably, "a mere colorable adjournment or procrastination of the performances of the act, for the purpose of delay." It is equivalent to a refusal. Having refused to perform the duty which the law imposed upon them on the proper day, without even the pretence of a reason for such conduct, the peremptory mandamus was very properly awarded, commanding the duty to be performed "*forthwith.*"

The judgment of the Circuit Court is, therefore, affirmed with costs.