THE STATE, EX REL. BENJAMIN F. SHACKELTON, v. THE BOARD OF COUNCILMEN OF THE TOWN OF GUTTENBERG, IN THE COUNTY OF HUDSON.

1. *Mandamus* is generally a proper remedy to enforce the levy of taxes for the payment of judgments against municipal corporations, when the ordinary process of execution is inadequate.
2. Every lawful tax rests upon legislative enactment, and when subordinate bodies seek to impose such a burden upon the citizen, they must show a clear and unmistakable authority so to do, derived from the express words or necessary implication of a statute.
3. Where the power of a municipality to levy taxes for its general purposes, was expressly limited to a certain amount, an authority to contract debts beyond that amount, for a special purpose, will not justify an inference that the power to levy taxes to pay those debts, was also conferred.
4. If the authority of a municipality to levy taxes is doubtful, a *mandamus* directing such levy, will not be awarded.

---

On *mandamus*.

Argued at June Term, 1877, before Justices SCUDDER, DIXON, and REED.

For the relator, *C. S. See.*

For the defendant, *J. H. Lippincott.*

The opinion of the court was delivered by

DIXON, J.   The relator has recovered judgments against the town of Guttenberg, in this court, on three "improvement certificates," issued by the town for the improvement of Hudson avenue, one dated August 10th, 1873, for $490.49; one dated October 14th, 1873, for $560, and one dated April 30th, 1875, for $340.   Upon these judgments, he issued executions to the sheriff of Hudson county, which that officer has returned unsatisfied, alleging that he could find no property of the town whereon to levy, and that he had served a copy of the execution on the collector of the town, but that the collector had no funds, and does not receive, in any one year, more than $1000.   The council of the town was thereupon requested, by the relator, to pass an ordinance directing a tax to be levied to raise the amount of his judgments, but refused, on the ground of want of legal authority to order any larger sum than $1000 to be assessed in each year.   The relator now prays a *mandamus*, compelling the council to make the provision requested.

That a *mandamus* is generally the proper remedy to enforce the levy of taxes for the payment of judgments against municipal corporations, where the ordinary process of execution is inadequate, seems both to follow from the reason of the thing, and to be settled by many adjudications.   Usually, the money required to satisfy such judgments, must be the proceeds of taxation.   The duty to pay is clearly and conclusively established by the judgments, and, execution failing, all ordinary legal remedy is exhausted, so that the conditions which justify a resort to *mandamus*, exist, viz., a clear legal right, requiring the performance of a specific duty, and no other adequate means of redress.

The United States courts have frequently employed the writ for this purpose, and the Supreme Court holds that its propriety is no longer questionable.   *Commissioners of Knox Co.* v. *Aspinwall*, 24 *How.* 376; *Supervisors* v. *Durant*, 9 *Wall.* 415.   And the propriety of a bill in equity is denied. *Walkley* v. *City of Muscatine*, 6 *Wall.* 481.

In England, the writ is claimed of right, under 17 and 18 *Vic.*, *ch.* 125, § 68, as ancillary to execution in certain cases, but the common law prerogative writ, likewise, might be so employed, in the discretion of the court. *Burland* v. *Local Board of Health*, 3 *B. & S.* 271; *Worthington* v. *Hulton*, *L. R.*, 1 *Q. B.* 63.

The applicability of this general rule to the case in hand is, however, denied, on the affirmation that the defendant has no authority to direct the levy of the tax which we are asked to command. If this affirmation be true, it is clear we should not grant the writ. It is necessary, therefore, to ascertain the defendant's authority in this regard.

Every lawful tax rests upon legislative enactment, and subordinate bodies that seek to impose such a burden upon the citizen, must be able to show a power so to do, derived from positive statute. The grant relied on must also be evident and unmistakable. It is not, perhaps, requisite that express authority to levy taxes for every specific purpose for which they are imposed, should be produced. The power, or, more guardedly speaking, an extension of power, might, under certain circumstances, be implied. For example, if a municipality, restricted as to the purposes for which it might incur debts or expend moneys, had, under its charter, unlimited authority to impose taxes for these purposes, then a subsequent extension of its power of expenditure, or of contracting obligations, would usually, by implication, enlarge, also, its power of taxation, so as to embrace these new purposes. Such an inference would arise, because taxation furnishes the common source of revenue for these public bodies; and when the legislature authorized increased expenditure on the part of such a body, whose power to tax had been limited only by its power to spend, it would be reasonable to suppose that the use of this sole power that it possessed to raise the means for its expenditures, was also intended. As, however, the power of taxation is a high prerogative of sovereignty, and one whose exercise directly divests the citizen of his property, its grant by implication is but little favored,

even as compared with other implied grants; and the inference of its existence, in any case, is easily rebutted. An authority to wield it cannot be collected by doubtful inferences from other powers, or powers relating to other subjects, nor deduced from any considerations of convenience or advantage. Nothing short of express words or necessary implication will answer the purpose. It should never be exercised where the right is doubtful. *Beaty* v. *Knowler's Lessee*, 4 *Pet.* 152; *Sharp* v. *Speir*, 4 *Hill* 76; *Dillon on Mun. Corp.*, § 605.

Under the guidance of·these principles, then, must we consider the powers of the defendant.

The town of Guttenberg was incorporated by act of March 9th, 1859. *Pamph. Laws, p.* 199. Its charter (Section 7) provided that, for the payment of the expenses incident to the corporation, other than those relating to streets, it should be lawful for the council, by ordinance, to order a sufficient sum, not exceeding $200 in any one year, to be levied for that purpose. The sum so ordered was to be levied by the assessor of the township of North Bergen, on the inhabitants and real estate of the town of Guttenberg, and collected by the collector of said township, in the same manner as township taxes were levied and collected, and was to be paid, by said collector, to the treasurer of the town. The expenses relating to streets were to be raised by assessment on the property benefited, and no provision seems to have been expressly made, either for raising these expenses while the work was in progress, or for raising any deficiency that might exist by reason of the cost exceeding the benefit.

In a supplement of April 9th, 1875, (*Pamph. Laws, p.* 612,) it was enacted (Section 5), that the board of councilmen should have power to pass and enforce ordinances to provide for raising a sum, not to exceed $1000 a year, for defraying the incidental expenses incurred by the provisions of the act. Section 8 of this supplement gives the board power to issue certificates of improvement, payable in one year or more, at their discretion, to the amount of seventy per centum of

work done on any street improvement, during its progress, and to the full amount of costs at its completion; and makes such certificates receivable in payment of the assessment for the improvement. It also legalizes and makes binding upon the town all certificates for street improvements theretofore issued. By the ninth section, it was enacted, that in case any certificates theretofore issued, or thereafter to be issued, for work on any street or avenue, should become due before the assessment for the improvement was collected, the board should have power to issue bonds, payable in from three to ten years, redeemable at the pleasure of the board, on sixty days' notice, and to sell and negotiate the bonds at not less than ninety-two per centum of their par value.

These are all the grants of power which the municipality has received relating to the subject before us.

I think they show, clearly, that the legislature intended to enable the corporation to create corporate debts by the issue of "improvement certificates," under the act of 1875, and to make those issued before that act, which purported to create corporate liability, legal corporate obligations. It is equally clear that there is no express grant of power to levy taxes for the payment of those debts. It is also evident that the fund out of which it was expected those debts would be finally liquidated, assessments for benefits, might not be secured in time to meet them, or, when secured, might prove inadequate, and that the sale of bonds, which, at best, was but a dilatory shift, might, under the restrictions imposed, be found impracticable and valueless. Hence, a resort to taxation, sooner or later, would, perhaps, be unavoidable. Do these circumstances justify the court in adjudging that, by this charter, the power of taxation to meet these obligations, was, therefore, impliedly conferred? I think not. The powers of the corporation are meagre. It has not, within itself, even the machinery complete for assessing and collecting taxes. The legislature has fixed a narrow limit to the exercise of the taxing power for the general purposes of the municipality; and this provision makes strongly against the inference that

it intended to authorize that power to be wielded without limit, for this special purpose. It reduces such an inference to the class of doubtful—that is, in the construction of these grants—impossible implications. Though the powers delegated for the payment of these debts may have proved inadequate, and it may be convenient and just that they should be made sufficient, yet, as we have seen, it is not within the scope of judicial authority to eke them out by dubious presumptions. Creditors whose rightful claims cannot be satisfied by their exercise, must seek further aid from the legislature, on whose faith they may safely rely. The creditors of the state itself, stand secure upon this basis.

I am, therefore, of opinion that the *mandamus* prayed for should not be allowed.