## UNITED STATES *ex rel.* MYRA CLARK GAINES *v.* CITY OF NEW ORLEANS.[2]

*(Circuit Court, E. D. Louisiana. June, 1883.)*

1. MANDAMUS.

   Where it appears, upon the return to a writ of execution against a municipal corporation, that, in reply to a demand made upon him, the mayor stated that the defendant had no property to satisfy the writ; that numerous similar writs had within a few months and within a few days been issued against defendant and returned unsatisfied, and in the return to the rule for the *mandamus* the defendant sets up that there are judgments against the defendant prior to that of relator wholly unsatisfied,—nothing could more fully establish the right of the relator to have a *mandamus* to cause the levy of a tax to pay her judgment.

2. MUNICIPAL CORPORATION.

   Where a muncipal corporation, by the authority of a statute, contracted a liability, in the absence of any other provision of the law for payment, she necessarily had power to bind herself, and did bind herself, to pay, by the exercise of those "powers incident to municipal corporations" with which she was endowed by the statute, *i. e.*, by levying a tax.

3. SAME—DAMAGES FOR A TORT—LA. CIVIL CODE, 2315.

   "Every act whatever of man that causes damage to another, *obliges* him through whose fault it happened to repair it." La. Civil Code, 2315. The meaning of this is that under Louisiana law the wrong done by one human

[1] 13 FED. REP. 37.
[2] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

being to another, or to his estate, creates an obligation; *i. e.*, brings at once into existence the relation of debtor and creditor between the wrong-doer and the injured party. This provision includes municipal corporations as among those who are subject to this obligation.

4. SAME—DEBTOR'S PROPERTY PLEDGED TO CREDITORS—LA. CIVIL CODE, 3183.

"The property of the debtor is the common pledge of his creditors." La. Civil Code, 3183. The meaning of this is that the property of the debtor is pledged so that it might be subjected to that process of the creditor which may be suitable to the case; the property of an individual debtor may be reached by seizure under a writ of *fieri facias;* the property of a debtor which is a municipal corporation may be reached by taxation.

5. SAME—RETROACTIVE LAWS—LA. CIVIL CODE, 8.

"A law can prescribe only for the future; it can have no retrospective operation." La. Civil Code, 8. This article has the paramount force of a constitutional provision; it is a regulation of the power of all subsequent laws, whether they be found in future constitutions or future statutes; it is a statutory declaration and covenant on the part of the state incapacitating subsequent laws from disturbing any obligations.

When these three provisions are put together, it results that the state placed the wrong-doer under an obligation; for the fulfillment of that obligation subjected all his present and future property to a pledge; and contracted that the law-making power should pass no law which should affect that obligation or that pledge. It follows, then, that at whatever time the obligation of the defendant to the relator was incurred, at that time there was, by operation of the statute, an inviolable pledge created, which should operate as well upon the future as upon the present, and should give her payment by taxation.

6. CONDITIONAL OBLIGATIONS.

The jurisprudence of Louisiana is settled that in conditional obligations the law which exists at the time the obligation was contracted, and not that which exists when the condition takes place, governs the rights of the parties.

7. LA. CONSTITUTION, ART. 209; ACT 93 OF LA. OF 1856, P. 68.

The article 209 of the present constitution of Louisiana, and the act No. 93 of 1856, p. 68, had no reference to already existing obligations of any sort.

8. LA. CONSTITUTION, ART. 11.

"All courts shall be open, and every person, for injury done him in his rights, lands, goods, person, or reputation, shall have adequate remedy by due process of law, and justice administered without denial or unreasonable delay." La. Const. art. 11. This provision is applicable to the redress for all wrongs done to person or property, and to that extent gives, for the redress for wrongs, a remedy completely adequate; *i. e.*, a satisfaction limited only by the property of the debtor.

Application for *Mandamus:*

*W. R. Mills, A. Goldthwaite,* and *J. Ward Gurley, Jr.,* for the relator.

*Charles F. Buck,* City Atty., for the respondent.

BILLINGS, J. This cause is submitted upon an application for a *mandamus* to compel the levy of a tax to pay a judgment rendered in this court. There are two preliminary objections: (1) That there has been issued no alternative writ of *mandamus*. The answer to this objection is that the proceedings in this cause—namely, the petition, which, together with an order to show cause, has been served upon the persons against whom the writ is sought—are such as have been invariably followed in this court in the hundreds of causes where similar writs have been allowed, and constitute precisely the mode of procedure pointed out by the Code of Practice. That an alternative writ is not a prerequisite for this process, see *Com'rs* v. *Aspinwall,*

24 How. 385. (2) That no return of *nulla bona* upon the writ of *fieri facias* has been made. The *mandamus* is asked for the amount of the judgment, less $40,000, the amount covered by a seizure under the writ of execution. The return of no property would be only very strong evidence that the *mandamus* was necessary for the recovery or collection of the judgment. The proof is that the mayor, when demand was made to point out property, stated to the marshal that the defendant had none wherewith to satisfy the writ, either wholly or in part; that numerous similar writs have, within the past few months and within a few days, been issued against the defendant and returned unsatisfied; and in the defendant's return the ground is set up that there are judgments against the defendant prior to the relator's, and wholly unsatisfied, amounting to $700,000, or thereabouts. No return in this case could more fully establish than does this evidence that the relator must have the levy of a tax to pay her judgment, or that it will remain unpaid. The evidence shows, and, indeed, the return of the defendant admits this, and pleads a statute which would dispense with a *fieri facias*. Under such proofs, and with such a return, the return of the execution is immaterial. High, Ex. Rem. § 377.

The real question, then, comes to be considered, has the relator shown herself to be entitled to a tax? This means, has the law-making power authorized and bound the city of New Orleans to assess and levy and collect a tax to pay relator's judgment?

The relator's demand, which is represented by this judgment, is for taking possession of her land and preventing her recovery of it from the year 1837 to the year 1877. The various charters of the city of New Orleans show that prior to and since the year 1836 the city has had "all such rights, powers, and capacities as are incident to municipal corporations," and also the capacity of "acquiring, enjoying, and alienating all kinds of property, real, personal, and mixed." Acts 1805, p. 46, § 1, and p. 56, § 6; Acts 1836, p. 31, § 4; Acts 1852, p. 48, § 22; Acts 1856, p. 136, § 1; and Acts 1870, Ex. Sess. p. 30, § 2.

The record shows that the debt or obligation merged in the judgment sprang out of the acquisition, enjoyment, and alienation of real property, and was, therefore, incurred in the exercise of the powers specially granted. This is conclusively settled by the judgment itself in this case, as well as by that in the case of *Gaines* v. *New Orleans*, 6 Wall. 716, and 15 Wall. 624.

In *Rabassa* v. *Orleans Navigation Co.* 5 La. 463, 464, the court state the question submitted to be whether a corporation is responsible for an injurious act in relation to a matter within the scope of its corporate objects. They answer the question in the affirmative, and say:

"If they [the corporation] rented a house and committed waste during the lease, or made themselves responsible by the non-performance of any obliga-

tion which the law imposes on the lessee, it can hardly be questioned that they would be bound to make good the loss. If it be objected that, in the case last put, the responsibility grew out of a contract, we can hardly see how their liability would be varied, if, without a contract, they entered upon the property of another and used it for corporate purposes."

Since the corporation, by the authority of the statute, contracted the liability, in the absence of any other provision of the law for payment, she necessarily had power to bind herself, and did bind herself, to pay by the exercise of those "powers incident to municipal corporations" with which she was also endowed by the statute, *i. e.*, by levying a tax. This reasoning is adopted and this conclusion is maintained by the supreme court of the United States with reference to a debt evidenced by a bond; but the conclusion is just as unavoidable with respect to all debts which originate in the exercise of granted powers.

The facts which beyond doubt authorize the conclusion that the power to tax exists are these: That the obligation is contracted or springs up inside of the granted powers; that there is no other mode of performance; that the power to tax is one of the usual powers incident to cities, and is therefore granted; and the conclusion is established with equal certainty whether the obligation be written or verbal, express or implied, resulting from a contract or tort, provided the act creating the obligation is within the delegated corporate faculties. In the language of the supreme court in *Rabassa* v. *New Orleans Nav. Co.*, *supra*, "We cannot see how the liability would be varied if, without a contract, they [the corporation] entered upon the property of another and used it for corporate purposes."

The supreme court of the United States, in *U. S.* v. *New Orleans*, 98 U. S. 393, says: "When such a corporation is created, the power of taxation is vested in it as an essential attribute, for all the purposes of its existence, unless its exercise be, in express terms, prohibited." Again, at page 397, the court say: "As already said, the power of taxation is a power incident to such a corporation, and may be exercised for all the purposes authorized by its charter or subsequent legislation."

I think it is established beyond successful controversy that the city of New Orleans has the power, and may be compelled, to levy this tax, unless, as is urged by the defendant, the power of taxation, with reference to this indebtedness, is qualified and controlled by the statute of 1856, and by article 209 of the constitution of 1879.

The act of 1856, No. 93, p. 68, provides that "the power to tax is limited to $1\frac{1}{2}$ per cent. of the assessed value of real estate and slaves, provided that such an amount shall be raised thereby as shall be sufficient to pay the interest of the present city debts, together with the gradual reduction of the capital of the consolidated debt, as required by the laws now in force."

The article 209 of our present constitution is as follows: "And no

parish or municipal tax for all purposes whatsoever shall exceed 10 mills on the dollar of valuation;" provided that by a vote of the inhabitants further taxation for certain improvements is allowable. It is to be observed that if this statute and constitutional provision affect this obligation, it cannot be denied that they would practically take away all remedy for the relator.

I shall, in this connection, and for the purpose of testing the argument urged by the defendant, assume, what I think is not the fact, that the act of 1856 and article 209, above set forth, were intended to affect pre-existing obligations. If they were such limitations they would be utterly void, as impairing a contract entered into on the part of the state of Louisiana itself.

There are three provisions of the statute, found in three articles of our Civil Code, each having been adopted many years prior to 1836, which require to be considered collectively in order to see just what the state has done, and has obligated itself not to do.

(1) Civil Code, art. 2315, (old 2294:) "Every act whatever of man that causes damage to another, *obliges* him through whose fault it happened to repair it." The meaning of this is that, under our law, the wrong done by one human being to another, or to his estate, creates an obligation; *i. e.*, brings at once into existence the relation of debtor and creditor between the wrong-doer and the injured party. This provision includes municipal corporations as among those who are subjected to this obligation. *McGary* v. *City of Lafayette*, 12 Rob. 668; S. C. 4 La. Ann. 440; *Rabassa* v. *Navigation Co.* 5 La. 463, 464; *Wilde* v. *City of New Orleans*, 12 La. Ann. 15; and *Gaines* v. *New Orleans*, 6 Wall. 716.

(2) Civil Code, art. 3183, (old 3150:) "The property of the debtor is the common pledge of his creditors." The preceding article subjects to the common pledge all the debtor's present and future property. The meaning of this is that the property of the debtor is pledged, so that it might be subjected to that process of the creditor which may be suitable to the case; the property of an individual debtor may be reached by seizure under a writ of *fieri facias;* the property of a debtor which is a municipal corporation may be reached by taxation.

(3) Civil Code, art. 8: "A law can prescribe only for the future; it can have no retrospective operation." This article has the paramount force of a constitutional provision. It is a regulation of the power of all subsequent laws, whether they be found in future constitutions or future statutes. It is a statutory declaration and convenant on the part of the state incapacitating subsequent laws from disturbing any obligations. Having been in operation from 1808 to the present time, it attached to all obligations in this case as they sprang into existence, and controls and protects them.

When the three provisions are put together, it results that the state placed the wrong-doer under an obligation, for its fulfillment sub-

jected all his present and future property to a pledge, and contracted that the law-making power should pass no law which should affect that obligation or that pledge.

It is of no avail, then, to urge that the indebtedness of the defendant springs out of a wrong; for, under the statutory enactments above recited, the obligation to repair an injury inflicted by a tort is made to differ from that existing under the laws of any other state. It is immediately clothed with the properties of an indebtedness, and made the basis of a pledge, indestructible, upon present and future acquired property. Nor does it avail to urge that the relator, for all these years, had but a chose in action, a litigious right, and that the limitation affected the remedy alone. Hers was a right of action inhering in an obligation created by the statute, which, through the form of a remedy, was secured by the pledge of the debtor's entire property through taxation, under a covenant on the part of the state that it should not be lessened nor impaired by future legislation. The subsequent legislation, if applicable and valid, would utterly destroy this created and guarantied right, for it would take away all possible remedy. "A right," say our supreme court, in *Sabatier* v. *Creditors,* 6 Martin, N. S. 590, "without a legal remedy, ceases to be a legal right." And again, at page 591, the court say: "On the implied obligation of the property being liable for the engagements of the debtor, the legislature cannot deprive the creditor of recourse on it." In *Com'rs* v. *Bean,* 3 Rob. 415, the court say: "The legislature cannot constitutionally, by any act subsequent to the creation of a debt, interfere to change or disturb the relation between debtor and creditor."

It is the express contract on the part of the state which has been violated, if these limitations are set up between the creditor and his remedy, that contract being to the effect that there should be a pledge of the present and future property of the defendant, and that no future law should disturb that pledge. In a case certainly no stronger the supreme court of the United States say: "The state and the corporation are, in such cases, equally bound." *Von Hoffman* v. *Quincy,* 4 Wall. 535.

This, in substance, is the question which was determined in *Green* v. *Biddle,* 8 Wheat. 1. There a compact entered into by the state of Kentucky, and incorporated into its constitution, had declared that all private rights and interests in land within a district should be determined by the laws existing in Virginia at the date of the cession of that district. A subsequent act of the legislature of Kentucky sought to relieve the occupants of land within the ceded district from damages for its wrongful detention before action brought. This act, though affecting only the remedy, and that in case of torts, since the continuance of that remedy had been promised by the state, was held to be void.

That case is conclusive upon the relators. In that case there had been an undertaking on the part of the state that the laws existing

at a certain time should regulate the recovery for mesne profits; in the relator's case there had been an undertaking on the part of the state that the laws in force when the right to recover originated should not be changed. In that case the undertaking was sought to be disregarded by a withdrawal of the right to recover; in the relator's case, by a withholding perpetually by limitation the guarantied remedy, and, practically, all remedy, for the right. Both these cases are protected. *Wolff* v. *New Orleans,* 103 U. S. 367.

It follows, then, that at whatever time the obligation of the defendant to the relator was incurred, at that time there was by operation of the statute an inviolable pledge created, which should operate as well upon the future as upon the present, and should give her payment by taxation according to the power of taxation with which the defendant was then invested. When was this obligation incurred?

The defendant had in bad faith gone into possession of relator's land, had sold the same and conveyed it with warranty, and by various devices kept the relator from recovering possession for a period of 41 years, and until the year 1877. The obligation of the defendant, since the city was vendor and warrantor and constructive possessor, all in bad faith, was to restore to her vendee the price, and acquit the vendee; that is, restore, for the vendee, the fruits to the owner, the relator. The obligation to restore the fruits originated at the same time with the obligation to restore the thing out of which the fruits issued—the land; *i. e.,* at the time of the sale and warranty in 1836. The condition upon which the obligation could be enforced, *i. e.,* the recovery of possession, did not take place till 1877. Civil Code, arts. 498–502. Our jurisprudence is settled that, in conditional obligations, the law which exists at the time the obligation was contracted, and not that which exists when the condition takes place, governs the rights of the parties. *Town* v. *Syndics of Morgan,* 2 La. 112. The measure, therefore, of relator's right to a tax must be determined by the law in force in 1836, and at that time there was no limit, neither in the constitution nor the statute. At that time, whatever debts the corporation incurred in the exercise of her corporate powers, which had been conferred by the legislature, whether by contract or by tort, she could be compelled to levy a tax to pay.

I have thus far considered the question upon the hypothesis that the act of 1856 and the article 209 of the present constitution were intended to apply to antecedent indebtedness. But, in my opinion, it is manifest that this statute and this article had no reference to already existing obligations of any sort. The very terms of the act of 1856 show that the limitation was to be operative only provided the tax thus afforded should be sufficient to pay the interest and the maturing principal. The care taken to make provision for all outstanding obligations is manifest.

The portion of the act of 1876 which withdraws the power of taxation has been declared void so far as concerns antecedent contract

obligations. This would for the same reason be true with regard to antecedent obligations not contract in their origin, but protected by a statutory contract which attached to them at their inception and adhered to them ever afterward.

The article 209 of our constitution was designed and ordained as a limit upon the expenditures of the parishes and cities—as a rule of rigid economy in the administration of their affairs. To that extent it may be invoked. It has no force nor application to obligations already completely incurred. Those who contend that it was intended to work a rejection, or, what is the same, an indefinite paralysis, of pre-existing obligations, must treat the provision as really stating that in order to secure moderate taxation all outstanding obligations are to be set aside and disregarded. The statement of such a construction should be its refutation.

The supreme court of this state has refused to observe this as a limit, so far as concerns indebtedness antecedently incurred springing from contracts. This case cannot in principle be distinguished from that. Under our law an obligation, the *vinculum juris*, which, in case of torts, in the other states, creates a definite hold upon the property of the debtor only after judgment and process issued, is made to attach to the property of the debtor by as indissoluble a tie from the moment of the commission of the act which is its source in case of an act of wrong as of an act of contract. In this state, when one takes or detains another's property, the state has promised the same compensation, and has connected that promise by a direct and present tie with the estate of the author of the act, as irrevocably as when one makes and delivers a promissory note.

If, therefore, as all concede, the obligation springing from a pre-existing contract does not fall within or is not controlled by this constitutional limitation, for the reason that it cannot be impaired, it must follow that, under our law, so far as concerns the resort to the property of the obligor, the antecedent obligation springing from a wrongful act is equally excluded, for the reason that that resort is by a statute which entered into the obligation secured, and future withdrawal or modification is by another statute, also forming a part of the obligation guarantied against.

The limitations urged by the defendant, if intended to reach this obligation, would have been ineffectual, because void. But they were not so intended. They applied only to the future. The provisions of our present constitution specifically deal with the redress for wrongs, and to the honor and credit of the state be it said, in case of damages arising from wrongs, it has torn aside and destroyed all exemptions and limitations which could be held to operate upon the right to resort to the property of the wrong-doer. Article 11 provides that "all courts shall be open, and every person, for injury done him in his rights, lands, goods, person, or reputation, shall have adequate remedy by due process of law, and justice adminis-

tered without denial or unreasonable delay." I understand this provision to be applicable to the redress for all wrongs done to person or property, and to that extent to give to the redress for wrongs a co-equal if not paramount security to that guarantied for the enforcement of contracts. I understand this provision to ordain, in behalf of those who, like the relator, are seeking reparation for injury done to themselves or their estate, not only that the courts shall be always open, not only that the courts shall have jurisdiction, not only that the suitors shall have a speedy and just trial, not only that there shall be awarded due process, but in addition to all there is solemnly ordained and guarantied *a remedy entirely adequate.* This remedy is distinct from due process, for it is to be *by* due process. The words "adequate remedy" mean complete satisfaction of the judgment without restriction. The process will vary with the nature of the recovery and the character of the debtor. If the judgment decree the recovery of money, and the debtor be a natural person, it would be a writ of *fieri facias.* If the debtor be a municipal corporation, the process would be a writ of *mandamus* compelling the levy of a tax; for it is settled that the process for compelling satisfaction of a money judgment against a municipal corporation is a *fieri facias* or a *mandamus* for a tax. Both are declared to be process in execution. *Riggs* v. *Johnson Co.* 6 Wall. 198, and *Memphis* v. *Brown,* 97 U. S. 300.

The conclusion is that the relator has a right to the tax prayed for; that she acquired this right before there was any limitation upon the power of the city to tax, except that springing from its statutory capacities as a corporation; that if the statute of 1856 and article 209 of the constitution were intended to include this case, they would be void as impairing the obligation of a contract, the state having contracted that relator's right should be unaffected by subsequent laws; that these limitations were not intended to apply to pre-existing obligations where the right of the creditor, through a tort or a contract upon the property of the debtor, was fixed by an irrepealable law; that these limitations were established with as complete an absence of purpose as there was of power to cast off or repudiate antecedent indebtedness, but were ordained as wholesome checks upon future expenditures and the creation of subsequent debts; that with reference to that class of indebtedness to which belongs the one upon which the relator recovered her judgment, the present constitution of the state not only imposes no restriction upon the right to satisfaction by the levy of a tax, but, on the contrary, has placed that right beyond the reach of legislative action, and by its own force has given due process and complete remedy; that in this case that process is a *mandamus,* and that remedy is the assessment and levy and collection of a tax.

The case of *Wolff* v. *New Orleans,* 103 U. S. 358, was in principle like this case. There, as here, the judgment had been registered, and

no provision made for its payment in the annual budget, and the supreme court, after dealing with all the questions involved in the acts of 1870 and 1876, in their mandate prescribe the form and terms of the writ and the time of the levy of the tax. That mandate will be followed in this case.

So far as this proceeding is concerned, the defendant must be credited with the amount seized under the *fieri facias,* namely, the sum of $40,000. For the balance of the judgment, with interest, the relator is entitled to a writ of *mandamus* as prayed for.