# SEYMOUR

*v.*

# THE UNITED STATES, EX REL. BRODIE.

MANDAMUS; PATENTS; INTERFERENCES.

1. The writ of *mandamus* lies only to compel the performance of some act or duty required by law to be performed, in the performance of which the relator is interested, or by the non-performance of which he is aggrieved or injured, and when there is no other specific remedy.

2. Where, in an interference proceeding between an applicant for a patent and a patentee, the question of priority of invention is decided by the examiner of interferences and the board of examiners-in-chief in favor of the patentee, but on appeal the Commissioner of Patents dissolves the interference for want of patentability in the subject-matter of the issue, a writ of *mandamus* will not lie on behalf of the patentee to compel the Commissioner to reinstate the interference proceeding and to proceed to determine the question of priority, upon the grounds that the relator was put to the expense of defending the inter-ference and that the reasons assigned by the Commissioner for the dissolution of the interference have discredited the rela-tor's patent and injured him commercially.

No. 673. Submitted April 7, 1897. Decided April 12, 1897.

HEARING on an appeal by the respondent from a judg-ment of the Supreme Court of the District of Columbia directing the issue of a writ of *mandamus* to the Commis-sioner of Patents requiring him to reinstate a certain inter-ference proceeding. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. W. A. Megrath* for the appellant.

*Mr. Vernon M. Dorsey* and *Mr. Thomas Ewing, Jr.,* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from an order of the Supreme Court of the District of Columbia awarding a writ of *mandamus* to require the Commissioner of Patents to reinstate a certain

interference proceeding pending in the Patent Office which he had dissolved, and to proceed to determine the question of priority involved in that proceeding.

It appears from the record that on June 21, 1887, letters patent had been issued to one Lemuel Coburn for an improvement devised by him in overhead tubular trolley-tracks, the principal characteristic feature of which in the present connection would seem to have been a semi-circular runway for the trolley tracks. Subsequently, on December 18, 1894, letters patent were issued to William H. Brodie, the relator in the present case, for a modification of the Coburn device, consisting, substantially, in the substitution of a flat bottom and flaring sides, giving a semi-polygonal cross-section, for the semi-circular runway of the previous Coburn patent. On August 19, 1895, Coburn filed an application in the Patent Office for a patent for the same substantially identical device or mechanism for which letters patent had been issued to the relator. An interference was then declared according to the laws and the rules of the office between the applicant Coburn and the patentee Brodie, and an adjudication had of the question of the priority of invention. The examiner of interferences decided this question in favor of Brodie, and his decision upon appeal was affirmed by the board of examiners-in-chief. Upon appeal from the board to the Commissioner of Patents, the latter adjudged that there was no patentable subject-matter in the issue, and dissolved the interference.

The Commissioner's decision was rendered on December 8, 1896, and seems to have been acquiesced in by the applicant Coburn. The patentee Brodie, however, the other party to the interference, assuming that the Commissioner at that stage of the case was without legal authority to pass upon the patentability of the subject-matter of issue, and that his jurisdiction was limited exclusively to the determination of the question of the priority of invention, applied to the Supreme Court of the District of Columbia by

petition for the writ of *mandamus* to require the Commissioner to reinstate the interference proceeding and to decide the question of priority of invention.

In response to the rule served upon him to show cause the Commissioner moved to quash the petition or rule on the ground that he had authority under the law to dissolve an interference for the reason for which this interference was dissolved.

Treating this motion as a demurrer to the petition, and there being, as it would seem, no controverted questions of fact in the case, the Supreme Court of the District adjudged that the relator 'was entitled to the writ and ordered it to issue as prayed; and from this adjudication and order the Commissioner has appealed.

Without entering into the merits of the controversy, we are unable to see wherein the relator is entitled to the writ of *mandamus*. Indeed, it is very clear to us that he is not entitled to it under the showing made in his petition. The function of the writ of *mandamus* in the law is well settled. It lies simply for the enforcement of the performance of some act or duty required by law to be performed, in the performance of which the applicant for the writ is interested, or by the non-performance of which he is aggrieved or injured, and when there is no other specific legal remedy. 3 Blackst. Com. 110; 4 Bac. Abr. 495; *Legg* v. *Mayor of Annapolis*, 42 Md. 203; *Knox County* v. *Aspinwall*, 24 How. 376; *United States* v. *Boutwell*, 17 Wall. 604; *Brownsville Taxing District* v. *Loague*, 129 U. S. 493; *Ex parte Pennsylvania Company*, 137 U. S. 451.

But we fail to see wherein, in the present case, the relator is interested in contemplation of law, or wherein he has been deprived of any legal right, or wherein the respondent has failed in the performance of any legal duty due to him. He had a patent; he has that patent yet legally unimpaired. Attack was made upon that patent by the adverse claim of another party. The attack took the shape of interference

proceedings in the Patent Office in accordance with the forms and provisions of law. Those interference proceedings have been dissolved, and the attack is at an end. The relator remains in full possession of all his legal rights to the same extent as before he was summoned to defend those rights. We find it impossible to see wherein he has been aggrieved or injured in any legal sense.

It is very true that he was put to trouble and expense in defending himself in the interference proceedings, and this may have been a hardship; but that is a very general incident of legal proceedings, and it is not apparent that it constitutes a ground for the issue of the writ of *mandamus*.

The substantial grievance of the relator is that he was injured, not legally, but commercially, by the reasons assigned by the Commissioner for the dissolution of the interference proceedings, which were that the claim in issue was not patentable. But even if it be assumed that the relator's patent was discredited in the community and injured commercially by the reasons so assigned, we still find it impossible to see wherein the respondent has failed in the performance of any legal duty to the relator for which the latter is entitled to have recourse to the writ of *mandamus*. The specific legal injury to the relator, if any there was at all, was the allegation of certain specific reasons for the respondent's decision. It is not apparent to us that the writ of *mandamus* should be used to counteract the effect of those reasons, or how the writ could be used to procure that result.

Nor is it apparent to us how, in a legal sense, it could benefit the relator to have the action of which he seeks the performance. If a reinstatement of the interference were ordered, the result would be necessarily either that the Commissioner would hold that he was not the original inventor of the device in controversy, and that this court likewise would so hold, or else that judgment of priority might finally be awarded in his favor. But certainly the first alternative

would not benefit him, and the second would not place him in any better position legally than that in which he is now. His patent would simply be sustained against the attack upon it. By the action already taken by the Commissioner, it has been so sustained. He has suffered no legal injury whatever.

Coburn, the unsuccessful applicant, might have some more substantial ground of complaint, and more substantial reason to apply for the writ of *mandamus*; for if the Commissioner was wrong in his conclusions he may possibly be without any remedy whatever; but the relator has his patent unimpaired. The discrediting of it is only by inference; and· even if such discrediting has been through error or mistake or without any good cause, the writ of *mandamus* is not an appropriate means for the remedy of the mischief. We think that this is too clear to need further argument or elaboration.

Holding, as we do, that the relator in this case is not entitled to the remedy which he seeks, we do not deem it proper to enter into the merits of the controversy. But we do deem it proper to say that, if there is ambiguity in the rules of the Patent Office, or if those rules do not provide sufficiently or explicitly for such contingencies as have been manifested in this case, the Commissioner, by the power vested in him to make rules for the government of his office, has the remedy in his own hands and should not fail to exercise it.

From what we have said it follows that we must regard the order appealed from in this case as error and that it should be vacated. The cause, therefore, will be remanded to the Supreme Court of the District of Columbia, with directions *to vacate its order of March 11, 1897, wherein it directed the issue of the peremptory writ of mandamus against the respondent; to quash the said writ if the same has been issued, and to dismiss the relator's petition, with costs; the relator to pay the costs of this appeal.*