**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-3984 & 16-1871
_____

BERISH BERGER; KILBRIDE INVESTMENTS LIMITED;
BUSYSTORE LIMITED; TOWERSTATES LIMITED;
BERGFELD CO. LIMITED; ARDENLINK LIMITED

v.

RICHARD ZEGHIBE; PATRIOT PARKING, INC.; JAMES RAPPOPORT;
DDI ARCHITECTS, P.C.; DAROFF DESIGN, INC.; DAROFF DESIGN INC, DDI
ARCHITECTS, P.C.; JATINDER CHAWLA; ELI WEINSTEIN; RAVINDER
CHAWLA; MARK SAHAYA; 2040 MARKET ASSOCIATES, LP; JFK BLVD
ACQUISITION PARTNERS, L.P.; PINE PROJECTS LLC, C/O ELI WEINSTEIN;
WORLD ACQUISITION PARTNERS CORPORATION

Jatinder Chawla,
Appellant
_____

CONSOLIDATED APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-08-cv-05861)
District Judge: Hon. Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
October 6, 2016
_____

Before: SHWARTZ, COWEN, and ROTH, <u>Circuit Judges</u>.
(Filed: October 17, 2016)

_____

OPINION[*]

_____

SHWARTZ, <u>Circuit Judge</u>.

Jatinder Chawla ("Jatinder")[1] appeals the District Court's order granting a preliminary injunction to Berish Berger, Kilbride Investments Limited, Busystore Limited in Liquidation, Towerstates Limited, Bergfeld Co. Limited, and Ardenlink Limited ("Judgment Creditors"), enjoining Philadelphia Chancellor, LP ("Philadelphia Chancellor") from making any payments to her and directing that the payments be placed in escrow. Jatinder claims that the District Court lacked jurisdiction over her and abused its discretion by granting the preliminary injunction. We disagree and will affirm.

I

Five years ago, a federal jury in the Eastern District of Pennsylvania awarded Judgment Creditors and others a $33 million judgment against Jatinder's husband, Ravinder Chawla ("Ravinder"), and others for fraud related to two real estate projects.[2] Collection has been unsuccessful because, on paper, Ravinder appears to have few assets,[3] even though he plays a leadership role in his family's real estate development business. Although he is not directly compensated for his services, the family business

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] For ease of reference, we are referring to the Chawlas by their first names.

[2] Jatinder was a party in the lawsuit but no judgment was entered against her.

[3] Ravinder apparently holds no interest in any real estate investment trusts, savings, money market, checking, or retirement accounts, stocks, bonds, mutual funds, securities, or negotiable instruments. With respect to personal property valued over $500, Ravinder claims to only own five business suits, a watch, and a gold chain.

2

pays for his luxury cars, private school education for his children, home repairs, meals, insurance, attorneys' fees, and some daily expenses.

Jatinder has an ownership interest in a number of companies that make up the family's real estate business, including Goldencents, Inc., from which she receives a $20,000 monthly stipend. Jatinder also has an ownership interest in an entity called Philadelphia Chancellor, which made a $200,000 distribution to her in 2014. Philadelphia Chancellor has a contract to sell a property (the "Chancellor Street Property") for $25 million, which could result in the Chawla family receiving between $8 million and $10 million.

In light of the impending sale of the Chancellor Street Property, Judgment Creditors filed a motion seeking a declaration that all of Jatinder's interests are the assets of Ravinder. They also sought an injunction prohibiting Ravinder and Jatinder from disguising, concealing, transferring, assigning, and/or otherwise disposing of Ravinder's assets held in Jatinder's name. In the alternative, Judgment Creditors asked that all distributions be placed in escrow. Following an evidentiary hearing, the District Court entered an order preliminarily enjoining Philadelphia Chancellor from making any payments to Jatinder, and directing that any payments be placed in escrow until there is a decision regarding whether Ravinder has a partnership interest in Jatinder's assets. Jatinder appeals.

II[4]

---

[4] We have jurisdiction pursuant to 28 U.S.C. § 1291 and review legal issues de novo, factual findings for clear error, and the District Court's order granting a

3

Jatinder argues that the District Court: (1) lacked subject matter jurisdiction to enter the preliminary injunction; (2) lacked jurisdiction under Fed. R. Civ. P. 69 to issue an injunction against a nonparty; and (3) abused its discretion by issuing the preliminary injunction. We will address each argument in turn.[5]

A

A district court that enters a judgment has subject matter jurisdiction over actions related to its enforcement. IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 309-10 (3d Cir. 2006) ("[A] federal court may exercise ancillary jurisdiction (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to . . . vindicate its authority, and effectuate its decrees." (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 379–80 (1994))).[6] The injunction sought here—to prevent Jatinder from receiving, transferring, or disposing of assets in a manner that would prevent Judgment Creditors from collecting on their judgment—is precisely the type of post-judgment action that falls within a district court's supplemental jurisdiction. Thus, the District Court had subject matter jurisdiction over this motion.

_____

preliminary injunction for abuse of discretion. Maldonado v. Houstoun, 157 F.3d 179, 183 (3d Cir. 1998).

[5] Contrary to Jatinder's argument, the relief sought here is not barred by res judicata based on Judgment Creditors' previously unsuccessful fraudulent transfer action arising from different real estate development projects. Cf. Purter v. Heckler, 771 F.2d 682, 690 (3d Cir. 1985) ("In order to raise successfully the defense of res judicata, the party asserting the defense must demonstrate[, among other things,] that . . . there had been a final judgment on the merits in a prior suit . . . [of] the same causes of action.").

[6] Our Court uses the terms ancillary jurisdiction and supplemental jurisdiction interchangeably. IFC Interconsult, 438 F.3d at 309.

4

B

Having determined that the District Court had subject matter jurisdiction, we next examine whether it had the power to issue an order resolving the motion against a nonparty. Judgment Creditors' post-judgment motion is governed by Rule 69, which sets forth the following guidelines for proceedings in aid of executing a judgment:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Accordingly, under Rule 69, the District Court was bound to follow the procedures set forth by Pennsylvania state law and any applicable federal statute in deciding whether it had the authority to enter an injunction impacting Jatinder. The operative statutes in this case were Pa.R.C.P. No. 3118 and 28 U.S.C. § 1651 (the "All Writs Act").[7] Rule 3118

---

[7] Rule 3118 sets forth the following directives for obtaining summary relief in aid of execution:

> (a) On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person
>> (1) enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution;
>> (2) enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution;
>> (3) directing the defendant or any other party or person to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached;
>> (4) directing the disclosure to the sheriff of the whereabouts of property of the defendant;

permits summary proceedings in aid of executing a judgment to maintain the status quo as to property that is owned by the judgment debtor or in which he has an interest. Greater Valley Terminal Corp. v. Goodman, 202 A.2d 89, 92, 94 (Pa. 1964). The All Writs Act has been interpreted to empower a federal court "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977). This power "extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." Id. at 174; see also Catalytic, Inc. v. Monmouth & Ocean Cty. Bldg. Trades Council, 829 F.2d 430, 434 (3d Cir. 1987) (holding that the All Writs Act empowers federal courts to enjoin nonparties to enforce orders in civil cases).[8] These two statutes collectively empower the District Court to grant a preliminary

---

(5) directing that property of the defendant which has been removed from the county or concealed for the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and
(6) granting such other relief as may be deemed necessary and appropriate.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

[8] Courts should only exercise their authority under the All Writs Act "where there is no other adequate remedy." Bd. of Comm'rs of Knox Cnty. v. Aspinwall, 65 U.S. 376, 377 (1860); Madden v. Myers, 102 F.3d 74, 79 (3d Cir. 1996).

injunction against a nonparty to maintain the status quo as to property that might have been placed beyond the reach of a judgment creditor to avoid satisfying a judgment.

Here, the District Court properly recognized a need to maintain the status quo as to Jatinder's assets until such time as it adjudicates whether a partnership exists in which Ravinder has an interest. The All Writs Act authorized the District Court to enjoin Jatinder, a nonparty, because, as demonstrated at the preliminary injunction hearing, she is in a position to frustrate Judgment Creditors' attempts to collect on their judgment by receiving income from Chawla family businesses in which Ravinder may have an interest. Thus, by acting within the scope of Rule 3118 and the All Writs Act, the District Court had the authority under Rule 69 to entertain a motion enjoining the distribution of assets to Jatinder.

C

We next examine whether the District Court acted within its discretion in granting the preliminary injunction. "To determine whether to grant a preliminary injunction, a district court must consider whether: "(1) . . . the movant has shown a reasonable probability of success on the merits; (2) . . . the movant will be irreparably injured by denial of the relief; (3) . . . granting preliminary relief will result in even greater harm to the nonmoving party; and (4) . . . granting the preliminary relief will be in the public interest." Iles v. de Jongh, 638 F.3d 169, 172 (3d Cir. 2011). Here, the District Court did not abuse its discretion by granting injunctive relief.

7

First, Judgment Creditors demonstrated a reasonable probability that a business partnership exists in which Ravinder has an interest.[9] The record demonstrates that: (1) Jatinder has an interest in numerous real estate holding entities that are connected to Chawla family real estate development ventures and that she receives income from those entities; (2) Jatinder has no knowledge of her interest in these real estate entities and plays little or no role in them; (3) Ravinder plays a leadership role in these entities; and (4) although Ravinder receives no formal compensation for his work on his family's real estate development ventures, the ventures subsidize many of Ravinder's expenses and provide him with cash for daily expenses, and give Jatinder a $20,000 monthly "stipend." These facts demonstrate a reasonable probability that a Chawla partnership exists, Ravinder has an interest in that partnership, and Judgment Creditors can execute upon the proceeds of that partnership.

Second, Judgment Creditors demonstrated that they would be irreparably harmed by the denial of relief and that a balance of the equities favors an injunction because Ravinder has made no effort to pay the judgment against him and, absent judicial action, will likely continue to evade his creditors and the judgment itself by structuring his finances to appear insolvent. Third, nothing in the record suggests that Jatinder will be injured by an order preliminarily enjoining her from receiving payments from the Chancellor Street Property sale because it appears she has many other assets to sustain

---

[9] The District Court noted that Judgment Creditors satisfied the first prong of the preliminary injunction standard because they have a judgment against Ravinder. The correct inquiry here, however, is whether Judgment Creditors have demonstrated a reasonable probability that a partnership exists in which Ravinder has an interest.

her.  Finally, granting the injunction is in the public interest because it promotes respect for judgments.

For these reasons, the District Court did not abuse its discretion by finding that Judgment Creditors met the factors necessary to grant preliminary injunctive relief.[10]

III

For the foregoing reasons, we will affirm the District Court's order.

---

[10] Jatinder's appeal of the order denying her emergency motion to require Judgment Creditors to post a bond was mooted by the subsequent order requiring Judgment Creditors to post a $1,000,000.00 bond.