CARTERET COUNTY et al. v. SOVEREIGN
CAMP, WOODMEN OF THE WORLD.
No. 3819.

Circuit Court of Appeals, Fourth Circuit.
June 3, 1935.

Julius F. Duncan, of Beaufort, N. C.,
and Luther Hamilton, of Morehead City,
N. C., for appellants.

Charles A. Hines, of Greensboro, N.
C. (Rainey T. Wells, of Omaha, Neb.,
and Hines & Boren, of Greensboro, N.
C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and
SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order award-
ing a writ of mandamus against the Board
of Commissioners of Carteret county, N.
C., commanding them "to levy, assess and
collect on and out of the taxable prop-
erty" within that county sufficient "mon-
eys by way of taxes" to pay a judgment in
the sum of $35,550 obtained by the Sov-
ereign Camp of the Woodmen of the
World on road and bridge bonds issued
by the county. The petition for man-
damus alleged that petitioner had obtained
the judgment; that demand had been made
upon respondents for payment thereof
without avail; that respondents had made
no provision for any tax levy to pay the
judgment or any substantial part of it;
that the county had no funds with which
to pay the judgment; and that respond-
ents had no intention of providing for
the levy and collection of taxes for its
payment. A motion to quash the alterna-
tive writ of mandamus, issued on the filing
of the petition, raised the point that no
execution had been issued against the
property of the county and that no neces-
sity for the issuance of the writ was al-
leged; and an answer filed on behalf
of respondents admitted the allegations of
the petition, but alleged that taxes levied
had not been collected and that, through
shrinkage of property values, payment of
the outstanding indebtedness of the coun-
ty had become impossible. The court
overruled the motion to quash and entered
the order awarding a peremptory writ
of mandamus on the allegations and ad-
missions of the pleadings; and from this
order the commissioners and the county
have appealed.

The point chiefly relied on by the
appellants is that no execution has been
issued against the property of the coun-
ty and returned unsatisfied. This is not
a valid objection, however, for the rea-
son that, under the law of North Car-
olina, execution may not issue against a
county. Gooch v. Gregory, 65 N. C. 142;
Lutterloh v. Commissioners, 65 N. C. 403;
Hughes v. Commissioners, 107 N. C. 598,
12 S. E. 465, 467; Nicholson v. Com-
missioners, 121 N. C. 27, 27 S. E. 996;
McIntosh, North Carolina Practice & Pro-
cedure p. 844. In the Hughes Case, supra,
the Supreme Court of North Carolina,

after a careful review of the authorities, held that execution would not issue against a county and that the creditor, under the rule generally applicable, would be restricted to the remedy of mandamus in collecting a county debt which had been reduced to judgment. After adverting to the rule in other states, the court said: "But in Gooch v. Gregory, 65 N. C. 142, Justice Dick, delivering the opinion of this court, after announcing that an execution cannot be issued at the instance of a creditor against a county, summarizes the powers granted to counties in North Carolina, and the legislation from which those powers are derived, as follows: 'Its power to contract debts and levy taxes is set forth in the constitution. Article 7. Under the act of 1868, c. 20 (Code, § 707, subds. 5, 7), a county may "purchase and hold land within its limits, and, for the use of its inhabitants," may purchase and hold such personal property as may be necessary to the exercise of its powers, and make such order for the disposition or use of its property as the interests of its inhabitants require. Thus it appears, that a county can only acquire and hold property for necessary public purposes, and for the benefit of all its citizens, and the plainest principles of public policy prevent such property from being sold under execution for the advantage of an individual.' The plaintiff could not, therefore, under the rule established by this court, insist upon issuing execution, and selling the railroad stock. It is well settled, also, that ordinarily the only remedy of a judgment creditor of a county is a writ of mandamus to compel its commissioners to levy a tax to pay the debt. * * * Under the general rule, a creditor is restricted to that remedy in the collection of a claim reduced to judgment against a county, because he cannot seize the revenues of the county or levy upon and sell property essential or useful for corporate purposes without putting in jeopardy the very existence of the corporation, and the presumption is, in the absence of specific information, that the corporation holds no property not used or needed for public purposes, and has no means of meeting its indebtedness, except out of the excess of its revenues over its necessary current expenses."

And if the county were not exempt from execution, a sufficient reason for not requiring the issuance of execution as a prerequisite to an application for mandamus is that the law under which the bonds in judgment were issued requires the county commissioners to levy a tax for their payment. Pub. Acts of 1917 c. 103, § 1 (c) and (d); Pub. Acts of 1919, c. 185, § 3 (amended by Pub. Acts 1920, Ex. Sess., c. 89) and § 4; N. C. Code, §§ 3768 and 3769. It would be unreasonable to require the bondholder to levy execution upon property alleged to belong to the county, and thus involve itself, in all probability, in complicated and expensive litigation, when the law under which the bonds were issued provides a simple method of payment if the officers of the county will but perform their plain duty under the law. The rule in such case was well stated by Mr. Justice Grier, speaking for the Supreme Court in Knox County v. Aspinwall, 24 How. 376, 383, 16 L. Ed. 735, as follows: "Even assuming that a general law of Indiana permits the public property of the county to be levied on and sold for the ordinary indebtedness of the county, it is clear that the bonds and coupons issued under the special provisions of this act were not left to this uncertain and insufficient remedy. The act provides a special fund for the payment of these obligations, on the faith and credit of which they were negotiated. It is especially incorporated into the contract, that this corporation shall assess a tax for the special purpose of paying the interest on these coupons. If the commissioners either neglect or refuse to perform this plain duty, imposed on them by law, the only remedy which the injured party can have for such refusal or neglect is the writ of mandamus." See, also, U. S. ex rel. Ranger v. New Orleans, 98 U. S. 381, 397, 25 L. Ed. 225; Padgett v. Post (C. C. A. 4th) 106 F. 600; Thompson v. Perris Irr. Dist. (C. C.) 116 F. 769.

◼ The points raised by the answer as to failure to collect taxes and the inability of the county to pay its debts because of shrinkage of property values are not discussed in the brief of appellants and need not be considered here. Certain it is, however, that the county may not be permitted because of its financial condition to defy its creditors and apply the tax money which it collects towards the payment of such of them as are willing to compromise on its terms, a course which

it seems to have been following if we are to judge from admissions made at the bar of the court. If the county is hopelessly involved in debt, it may, with the co-operation of a majority in amount of its creditors, invoke the provisions of the Act of May 24, 1934, 48 Stat. 798 (11 USCA §§ 301–303). If it is unable to secure this co-operation of creditors, and the amount which it is able to collect from taxes after proper effort is insufficient to meet the claims of creditors of equal standing with those of plaintiff, it may obtain relief for itself and its other creditors by supplemental petition invoking the principles followed in Groner et al. v. U. S. ex rel. Snower (C. C. A. 8th) 73 F.(2d) 126; Norris v. Montezuma Valley Irr. Dist. (C. C. A. 8th) 248 F. 369, 375; Jewell v. City of Superior (C. C. A. 7th) 135 F. 19, 24; State v. Little River Drainage Dist., 334 Mo. 753, 68 S.W.(2d) 671; Morris, Mather & Co. v. Port of Astoria, 141 Or. 251, 15 P.(2d) 385. But it may not invoke its embarrassing debt burden as an excuse for refusing to do anything at all. The order appealed from requires a report from the defendants on the first days of January, April, July, and October of the year 1935 and on the same dates in each succeeding year until the judgment is fully paid, and thus shows an intention that the other obligations of the county shall be respected in the assessment and collection of taxes for the payment of plaintiff's judgment. We find no error in the order as entered, and same is accordingly affirmed.

Affirmed.