Dav**id** S**holtz**, *et al.,* v. S**tate**, *ex rel* H**arry** C. D**avis**.

163 So. 854.

Opinion Filed November 4, 1935.

*Cary D. Landis,* Attorney General, and *Robert J. Pleus* and *Ira A. Hutchison,* Assistants, for Plaintiffs in Error;

*Shutts & Bowen, Charles A. Carroll,* all of Miami, and *William K. Whitfield,* of Tallahassee, for Defendant in Error;

B**uford**, J.—The writ of error brings for review a judgment for peremptory writ of mandamus requiring plaintiffs in error, the respondents in the court below, as follows:

"Forthwith to convene and pass any and all instruments and resolutions necessary to authorize the payment to the relator of his past due coupons in the amount of $5,500.00, described in the alternative writ as amended, to-wit, interest coupons of series 15, 16, 17 and 18, which matured March 1st, 1933, September 1, 1933, March 1, 1934, and September 1, 1934, each in the amount of $27.50 of County of Hernando Road Bonds numbered 170 to 219, both inclusive, upon presentation and surrender of the said interest cou-

pons for cancellation, out of moneys held by said Board to the credit of said county derived from the levy of ad valorem taxes on the property of said county, based on millage fixed for the payment of interest on the coupons of said bonds, and you are commanded to cause such payment to be made by issuing, delivering and honoring any and all checks or warrants necessary to accomplish the same; and that you make return to this Court on or before twenty days from the date of this writ, showing your compliance with the commands hereof."

The amended alternative writ of mandamus, after alleging the issuance of bonds and interest coupons by the County Commissioners of Hernando County in the sum of One Million Dollars, in denominations of $1,000 each, numbered from 1 to 1000, both inclusive, and maturing on different dates as provided in the bonds, alleges:

"That in each of said bonds the said county acknowledged itself indebted and promised to pay to the bearer the sum of $1,000.00 in gold coin of the United States of America at the then standard of weight and fineness, with interest thereon at the rate of 5½% per annum, payable semi-annually on the first days of March and September in each year upon the presentation and surrender of the interest coupons evidencing and representing said semiannual interest payments, which were annexed to said bonds, as the same should severally mature, both principal and interest thereof being made payable at the office of the Chase National Bank, in the City of New York and State of New York; that in and by each of said bonds it was recited by and for and on behalf of the said county, among other things, that said bonds were issued for the purpose of raising funds to pay the cost of constructing paved, macadamized or other hard-surfaced highways in said county and pursuant to a vote of

a majority of the qualified freeholder electors thereof at an election duly called and held and resolutions duly adopted by the Board of County Commissioners thereof, and that all acts, conditions and things required to exist or to be done precedent to and in the issuance of said bonds by the laws and Constitution of said State, had duly happened and been performed, that provision had been made for the levy and collection of a direct annual tax upon all the taxable property within said county sufficient to pay the interest and principal of said bonds as the same should become due, that the total indebtedness of said county, including said bond, did not exceed any constitutional or statutory limitation, and that the full faith, credit and resources of said county were irrevocably pledged for the prompt payment of the principal and interest of said bond as the same become due."

And further alleged:

"That to evidence such interest which should accrue on said bonds to the dates of their maturities, said county executed and delivered with said bonds certain interest coupons numbered serially from 1 to a number representing the number of six-month periods between the date of the issuance of said bonds and the dates of their respective maturities, each coupon being in the sum of $27.50, and in and by each of said coupons the said county promised to pay to the bearer thereof $27.50 in gold coin at the Chase National Bank in the City of New York, N. Y.; that a true copy (except as to the number and maturity dates thereof and the number of the bond to which annexed) of each of said coupons is attached hereto, made a part hereof and marked Exhibit 2.

"That said bonds and each of them were duly validated and confirmed by a decree of the Circuit Court of Florida,

Fifth Judicial Circuit in and for Hernando County, rendered the 10th day of November, 1925, in a proceeding seeking their validation, instituted by the Board of County Commissioners of Hernando County, Florida, and that no appeal from said decree was ever taken and that said decree is in full force and effect.

"That relator is the bearer and holder of certain of said bonds hereinbefore described in Paragraph III hereof, as follows: Bonds numbered 170 to 219, both inclusive, each due September 1, 1925, totalling the principal sum of $50,000.00; that interest on said bonds was paid to September 1, 1932, but interest coupons (each in the amount of $27.50) of Series 15, 16, 17 and 18, representing interest on said bonds which became due on March 1, 1933, September 1, 1933, March 1, 1934, and September 1, 1934, totalling $5,500.00, have not been paid, or any part thereof, and are past due and owing to relator."

And further alleged the creation of a State Board of Administration and alleged:

"That by virtue of the express provisions, directions and commands of Chapter 14486, Laws of Florida, Acts of 1929, Ex. Sess., The Board of Administration Act, the Bond Trustees of the said County paid over to the Respondent Treasurer of the State of Florida, as Treasurer of said Board and as Treasurer *ex officio* of Hernando County, Florida, certain monies which were in their possession and control as funds and monies of a sinking fund which had been derived from the levy and collection of ad valorem taxes on the property of said county based upon millage fixed for payment of principal and interest of the bonds of said issues; that the Tax Collector of the said county has likewise, pursuant to the directions and provisions of said Act, paid over to the Treasurer of said Board, all

monies and proceeds of taxes received and collected by him from taxes levied subsequent to the creation of said Board on the property of the county based on millage fixed for payment of principal and interest of bonds of said issue; that likewise the officials of said county charged with the collection of such taxes after the same became delinquent, have paid to the said respondent Treasurer of said Board and *ex officio* Treasurer of said county, all such delinquent taxes collected by them, which were levied upon millage fixed for payment of principal and interest of bonds of said issue; that under the relator's contract on his said bonds, as fixed by the laws in effect at the time of the making, issuance, sale and delivery of said bonds, and prior to the passage and enactment of the Board of Administration Act, the proceeds of such taxes levied for payment of the principal and interest of the bonds of said issue were and are pledges to the payment thereof and to use for no other purpose, and were required to be paid over to the Bond Trustee of the said county and in their hands were applicable to payment of principal and interest of such bonds as the same should mature or which should have matured, and that under relator's said contract on his said bonds he was and is entitled to require application of such proceeds of such taxes to payment of his above described interest coupons, and, under his said contract the relator was entitled, upon refusal of the Bond Trustees to so pay such interest coupons from said funds, to require and compel by mandamus the performance of the acts necessary to make such application of such bond tax monies.

"That the Board of Administration, through its respondent officials, holds in its possession, custody and control to the credit of Hernando County, Florida, a sum in excess of the $5,500.00 due on relator's aforesaid coupons, which

money was received by them from the said officers of Hernando County, and constitutes the proceeds of ad valorem taxes levied on the property of said county based on the millage fixed for the payment of interest coupons of bonds of said issue, and is now held by said Board as sinking fund monies for such purpose, as successors to the custodians of such funds originally provided for in said statutes under which said bonds were issued and such taxes for the payment of interest thereon so levied and collected."

It then alleges that it is the duty of the Board to pay the past due interest coupons originally attached to the bonds held by the relator in the sum of $5,500.00 out of the moneys held by the Board derived from ad valorem taxes levied on the property of said county or millage fixed for the payment thereof.

Motion to quash the alternative writ was presented and overruled. Thereupon, return was filed, paragraph 8 of which is as follows:

"In answer to numbered paragraph 8, these respondents say that on September 7, 1934, the date of the service of the original alternative writ of mandamus herein, there was in their possession, custody and control, to the credit of the bond issue involved, the sum of $21,762.07, exclusive of amounts impounded under the previous writs of mandamus duly issued and served, which said moneys, and all of them, were derived from a forty mill levy for the fiscal year 1933-34, which levy was made under command of a peremptory writ of mandamus under date of November 13, 1933, issued by the Supreme Court of Florida in the case of State, *ex rel.* Bush, v. Simpson, *et al.* That said forty mill levy was required pursuant to the terms of the said peremptory writ of mandamus which commanded the levy of an amount sufficient to pay the then past due interest

coupons and interest coupons maturing during the then current fiscal year, and an amount annually required to establish a sinking fund for the ultimate redemption of the bonds involved. That the total amount due on such coupons amounts to the sum of $107,030. That as a result of these facts, these respondents allege that the moneys so resulting constitute a trust fund in which the holders of the said maturing coupons are entitled to share only on a *pro rata* basis; that is to say, upon the basis which the amount collected bears to the whole amount due."

Referring to the case of State, *ex rel.* Bush, v. Simpson, 112 Fla. 627, 150 Sou. 800, which is the case referred to in paragraph 8 of the return, peremptory writ was granted on authority of the following cases:

"Columbia County Commissioners v. King, 13 Fla. 451; State v. Lehman, 100 Fla. 1313, 131 Sou. 533; Rountree v. State, 102 Fla. 246, 135 Sou. 888; State v. Baskin, 102 Fla. 329, 136 Sou. 262; Little River Bank & Trust Co. v. Johnson, 102 Fla. 828, 136 Sou. 452."

And by the writ in that case the respondents were required "to immediately convene and revise their estimate of expenses (annual county budget for the fiscal year 1933-1934) so as to include therein an appropriation item sufficient to pay the past due interest and the interest which will mature prior to October 1, 1934, upon the outstanding bonds of the issue of bonds described in paragraph 2 of the alternative writ and appropriation of a sum sufficient to meet the amount annually required to be raised as a sinking fund, to meet the principal of the said bonds and to levy a tax for the year 1933 upon all the taxable property in Hernando County sufficient to assure the payment of all past due interest and interest which will mature prior to October 1, 1934, upon all the outstanding bonds described in

paragraph 2 of the writ and sufficient to meet the amount annually required to be raised as a sinking fund to meet the principal of the said bonds. And the writ required the Tax Assessor, one of the respondents, as Tax Assessor, to assess, enter, calculate and carry out said taxes so levied on the 1933 assessment roll of Hernando County, Florida, and further commanded the Clerk of the Circuit Court as *Ex Officio* Clerk of the Board of County Commissioners of Hernando County to execute and certify all papers, certificates and resolutions which he is required by law to execute and certify in the performance of the duties required by the writ," etc.

That mandamus will lie to require the Board of Administration to perform a duty like that herein involved is settled in this jurisdiction by the opinions and judgments in State, *ex rel.* Center, v. Sholtz, *et al.,* 116 Fla. 764, 156 Sou. 746, also see 156 Sou. 747; State, *ex rel.* Suwannee River Bridge Co., v. Sholtz, *et al.,* 119 Fla. 701, 160 Sou. 872, also 873 and 874; State, *ex rel.* Andrews, v. Sholtz, *et al.,* 119 Fla. 423, 162 Sou. 865.

So the only question open for determination now is whether or not the fact that the levy was made for the payment of delinquent interest coupons pursuant to mandamus requiring the County Commissioners to make a levy "to meet the principal of the said bonds and to levy a tax for the year 1933 upon all the taxable property in Hernando County. sufficient to assure the payment of all past due interest and interest which will mature prior to October 1, 1934, upon all the outstanding bonds described in paragraph 2 of the writ and sufficient to meet the amount annually required to be raised as a sinking fund to meet the principal of the said bonds," will take this fund out of the rule established in the cases cited. On logic and com-

mon sense, it cannot be said to do so. Here the County Commissioners were coerced by mandamus not to levy a tax for the payment of specific coupons attached to certain numbered bonds of certain maturities, but were coerced to levy a tax to meet the payment of all past due coupons and all coupons of a certain bond issue which would mature on or before October 1, 1934. The coupons here under consideration constitute a part of the very coupons for which that tax was required to be levied and, therefore, the fund has the same status as it would have, had the tax been levied voluntarily by the County Commissioners, instead of having been levied under the coercion of a writ of mandamus. See State, *ex rel.* Gillespie, v. Baskin, 102 Fla. 329, 136 Sou. 262. That the millage levied did not produce sufficient funds to pay all of the past due interest coupons and those which would mature prior to October 1, 1934, does not affect the right of the relator to his remedy by mandamus to compel the payment of his particular coupons when the pleadings show that there is a sufficient amount of money on hand produced by taxation for the purpose of paying his coupons, although when that fund is so applied it will not leave sufficient money in the fund to pay all other coupons coming within the same class, in the absence of a showing in the pleadings that the fund on hand was produced by taxation for the payment of other particularly described coupons.

Therefore, the judgment should be affirmed.

It is so ordered.

Affirmed.

WHITFIELD, C. J., and TERRELL, and DAVIS J. J., concur.