TOWN OF COLUMBUS v. BARRINGER.
No. 4010.

Circuit Court of Appeals, Fourth Circuit.
Oct. 6, 1936.

J. E. Shipman, of Hendersonville, N. C., and Frank Carter and Carter & Carter, all of Asheville, N. C., for appellant.

John Newitt, of Charlotte, N. C. (Marvin L. Ritch, of Charlotte, N. C., on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

The plaintiff in the District Court, a citizen and resident of South Carolina, brought suit against the town of Columbus, N. C., to recover the amount due upon the unpaid interest coupons on certain waterwork bonds issued by the town, and on July 3, 1935, recovered a judgment for $1,350, with interest. No objection was made to the entry of the judgment for the amount of the debt, but, by agreement of the parties, certain questions, raised by a demurrer to an equitable plea or counterclaim of the town relating to the allocation of its available funds to the payment of other creditors as well as the plaintiff, were reserved for future decision.

Subsequently, the plaintiff filed a petition for a writ of mandamus requiring the town to levy additional taxes with which to pay the judgment, and the town was ordered to show cause why the writ should not issue. By agreement of counsel, a hearing was had at the same time upon the petition for mandamus and upon the demurrer of the plaintiff to the counterclaim for equitable relief. The court treated the counterclaim as an affidavit filed in opposition to the petition for mandamus, and considered it in connection with an affidavit filed by the plaintiff after the entry of the judgment in opposition to the counterclaim and in support of the petition for mandamus. The District Judge was of the opinion that the town was not entitled to relief in equity and therefore sustained the demurrer and dismissed the counterclaim; and also ordered that a writ of mandamus be issued commanding the officials of the town to levy upon the taxable property within its limits, at the earliest date that a tax might lawfully be levied, a sufficient tax to produce the net sum of $500 in each tax year, and to collect the same and pay it into the régistry of the court for the use of the plaintiff until his judgment should be satisfied, but subject to the right of the court from time to time to increase or diminish the amount of the yearly payment as the court might deem just.

The affidavit, in contradiction of the allegations of the counterclaim which we shall presently consider, stated that the town was not insolvent, but that its defaults had been caused by great neglect in the collection of taxes and water rents, and that, with proper management, the principal and interest of the bonds could be paid. We do not perceive, however, how we can take the affidavit into account in deciding the questions which arise upon this appeal, for the District Court considered the counterclaim upon demurrer and dismissed it as insufficient, and we must accept its allegations as true. It was correct procedure to file the petition for mandamus as ancillary to the action at law for judgment upon the debt, because it was only in the exercise of the jurisdiction conferred upon it by statute that the federal court could issue the writ as a substitute for the ordinary process of execution that was not available against the municipality. 28 U.S.C.A. § 377; Washington County v. Durant, 9 Wall. 415, 19 L.Ed. 732; County of Green v. Daniels, 102 U. S. 187, 26 L.Ed. 99; Carteret County v. Sovereign Camp (C.C.A.) 78 F.(2d) 337. The important question is whether it was proper to issue the writ notwithstanding the allegations of the counterclaim, and hence we shall consider the counterclaim first as an answer to the original complaint and second as an answer to the petition for mandamus, although it is not altogether clear from the record whether it was intended to be so used in the District Court.

The errors assigned on this appeal are that the court erred in dismissing the counterclaim for equitable relief and in issuing the writ of mandamus. The substantial allegations of the counterclaim are disclosed in the following recital: The population of the town is 340. In 1924, the town installed a system of public water supply at an expense of $26,000, of which $10,000 was contributed by the county of Polk, in which the town is located, in consideration of an agreement that the county should perpetually have a free water supply for the county buildings. The balance of $16,000 was provided by an issue of waterworks bonds, of which $13,500 are still outstanding. In 1927, the city put out a second bond issue of $25,000 to meet the expenses of certain other public improvements which it had undertaken and to cover the cost of necessary improvements in the water system. This issue includes bonds held by the plaintiff in the sum of $7,000 and bonds held by eight other persons in the aggregate sum of $18,000. The tax rate since the bond issue of 1927 has been uniformly maintained at the rate of $1 upon each $100 of assessable value, and the governing bodies of the town have been of the opinion that this is the maximum rate proper to be levied, having regard to the ability of the taxpayers to pay and the added burden of county, state, and federal taxes. The assessed value of property in the town has decreased from $254,645.50 in 1929 to $164,455.80 in 1934, and, despite diligent efforts, the amount of the taxes collected has decreased from $1,794.35 in 1929 to $858.80 in 1934. The water rate has at all times been maintained at $1.50 per month for each domestic or other establishment served, and this, in the opinion of the governing body of the town, has been the maximum that the customers could afford to pay. The average gross earnings of the system during the whole period has been $75 a month, which has been absorbed by operating costs, without any allowance for depreciation, obsolescence, or other capital losses, so that there has never been a surplus applicable to the payment of either interest or principal of the bonds. The sum total of the moneys realized or realizable from the power to tax or from the operation of the waterworks system is insufficient to admit of any payment on the outstanding indebtedness, either principal or interest, and in short, the municipality is utterly and hopelessly insolvent. A severe reaction in the real estate market took place in Western North Carolina in 1927,

and since 1929 there has been such a severe depression as this generation has never known. There are approximately 15 holders of the defaulted obligations of the city, and the situation resulting from the conditions described is such that it can be dealt with justly and effectively only by a court of equity pending a settlement between the town and its creditors. The counterclaim therefore prayed the intervention of a court of equity in order that a multiplicity of actions by the bondholders may be prevented, that preferences of particular classes of creditors and their rights in particular funds coming into the hands of the city and the equitable allocation among the several classes of creditors of such funds as may come into its hands may be determined.

■ It is clear that the counterclaim was insufficient to prevent the entry of a judgment in the bondholders' favor against the town for the amount of the overdue interest. Neither the validity of the bonds nor the amount of the indebtedness was disputed, and the creditor was without means to enforce the payment of his claim without the entry of a judgment in his favor. Even a judgment creditor of a municipality ordinarily has no other means of enforcing payment than the issuance of a writ of mandamus to compel the proper officers of the municipality to levy and collect a tax for that purpose. A simple contract debt cannot be made the basis of an application for a mandamus to compel the levy of a tax so long as it retains its form as a simple debt. Heine v. Board of Levee Commissioners, 19 Wall. 655, 22 L.Ed. 223. It follows that, even if the counterclaim showed with sufficient certainty that the town was insolvent and unable to pay its bonded indebtedness in full, the counterclaim was premature, for the mere entry of the judgment did not entitle the bondholder to payment of its bonds in full nor prevent the intervention of other bondholders for the purpose of sharing in any fund that might thereafter be collected.

■ We are of opinion also that the counterclaim is insufficient as an answer to the petition for mandamus. The general allegation of insolvency, which it contains, must be read in connection with the specific allegations of the pleading. From these it appears that the claim of insolvency rests upon the opinion of the city officials that the city tax rate of $1 per hundred and a water rate of $1.50 per month have been the maximum rates that the citizens of the

town could afford to pay, and no attempt to increase either of these rates has been made. A municipality may not avoid its obligations by mere estimate or expression of opinion that it is unable to pay. It would be time enough to take this position after an earnest effort has been made to raise the necessary funds by increasing the taxes and water rents. The dismissal of the counterclaim as insufficient by the District Judge was quite in accord with the decision of the Supreme Court of the United States in City of Galena v. Amy, 5 Wall. 705, 18 L.Ed. 560, in which a bondholder, having obtained a judgment against the city on certain bonds whose validity was not drawn in question, filed a petition for mandamus in the federal court. It was held that the city under the state law had the power and duty of levying a tax to pay its funded debt, and that the return of the city showed no sufficient reason why the writ of mandamus should not issue. In considering a demurrer to this return, the Court said (5 Wall. 705, at pages 709, 710, 18 L.Ed. 560):

"It is insisted that the city owes a large amount of other debts, and that if these taxes are collected the other creditors will be entitled to share in the distribution of the proceeds.

"It is not competent for the respondents to make this objection. When any other creditor complains in a proper proceeding, and asks that the funds be marshalled, it will be time enough to consider the subject.

"The counsel for the plaintiffs in error has called our attention, with emphasis and eloquence, to the diminished resources of the city, and the disproportionate magnitude of its debt. Much as personally we may regret such a state of things, we can give no weight to considerations of this character, when placed in the scale as a counterpoise to the contract, the law, the legal rights of the creditor, and our duty to enforce them. Such securities occupy the same ground in this court as all others which are brought before us. When clothed with legal validity, it is our purpose to sustain them, and to give to their holders the benefit of all the remedies to which the law entitles them. When invalid, we have not hesitated and shall not hesitate to say so. But we cannot recognize a dis-

tinction, unknown to the law, between this and any other class of obligations we may be called upon to enforce."

See, also, the like comment of the court in Rees v. City of Watertown, 19 Wall. 107, 109, 110, 116, 22 L.Ed. 72; Morris, Mather & Co. v. Port of Astoria, 141 Or. 251, 15 P.(2d) 385, 388.

There is no suggestion that the city has not full power to increase the rates to such a point as will produce the needed revenue, and we do not think that the pleading shows that an attempt to exercise the power would be barren of results. Furthermore, the judgment that we are now considering merely provides that a tax be levied at a sufficient rate to produce the sum of $500 annually, to be collected and paid into the registry of the court for the use of the plaintiff, but subject to the right of the court from time to time to increase or diminish the amount of the yearly payment as to the court may seem just. There is no contention that the city cannot raise the sum of $500 per year, and no other creditor has as yet attempted to intervene. In the meantime, the rights of other creditors will not be lost or jeopardized in view of the reservation, for the court thereby retains full power to consider any petition that may hereafter be filed by other creditors or by the town itself, and to make such further orders as will enable it to do full justice to all parties in interest.

In Carteret County v. Sovereign Camp, 78 F.(2d) 337, we had occasion to refer to decisions—although we had then no occasion to apply them—in which the relative rights of creditors of insolvent municipalities have been considered. These decisions are now of greater significance since the Municipal Bankruptcy Act of May 24, 1934, 11 U.S.C.A. §§ 301 to 303, has been declared unconstitutional in Ashton v. Cameron County Water Imp. Dist., 56 S. Ct. 892, 80 L.Ed. 1309.[1] The question has frequently arisen whether the holder of matured bonds of a municipality, who has reduced his claim to judgment, may proceed by petition for mandamus and secure payment of his claim in full out of a fund in the hands of the municipality which is insufficient to pay all the matured obligations, or whether such a fund should be distributed pro rata amongst all creditors in the same class. The determining factor

---

[1] Some attempt has been made by state statute to deal with the problems involved. See the article by E. J. Dimock, 22 Va.L.Rev. 39, note in 45 Yale L.J. 702, State ex rel. Buckwalter v. Lakeland, 112 Fla. 200, 150 So. 508, 90 A.L.R. 704, and note.

in a large number of decisions has been the existence of an inexhaustible taxing power, so that the fund, although insufficient at the time to meet the total payment, is subject to replenishment. In such a, situation, many cases hold that vigilance should be rewarded and the judgment creditor should be paid in full, since eventually all creditors in the same class may expect to be paid.[2] But, when it is clear that all creditors in like situation will never be pàid in full, or when grave doubts arise as to whether all will be so paid, it has been frequently held that the fund should be distributed pro rata; and this is particularly true when the sole security consists of a special assessment, as in the case of improvement bonds, and the full taxing power of the municipality is not available for the liquidation of the bonds.[3] A tendency is noticeable in recent decisions to require a pro rata distribution amongst the creditors where the fund, although theoretically inexhaustible through the exercise of the taxing power, is actually limited on account of a present financial inability of the municipality to meet the claims against it. This course was followed in Morris, Mather & Co. v. Port of Astoria, 141 Or. 251, 15 P.(2d) 385, 388, where the city was suffering from the effects of a disastrous fire. However, in none of these cases is it suggested that total indebtedness should be discharged upon part payment as the result of the insolvency, but merely that the available funds should not be awarded to the creditor who first secures a judgment but should be distributed equitably amongst all of the bondholders. In the state of facts prevailing in the present case, the occasion does not arise to deduce from this mass of litigation the rule best adapted by reason and authority to solve the questions arising between bondholders and defaulting municipalities.

The judgment of the District Court is affirmed.

[2] Voorhies v. Houston, 70 Tex. 331, 7 S.W. 679; State ex rel. Buckwalter v. Lakeland, 112 Fla. 200, 150 So. 508, 90 A.L.R. 704; United States v. Village of Kent (C.C.) 107 F. 190, affirmed (C.C.A.) 113 F. 232; Snower v. Hope Drainage District (D.C.) 2 F.Supp. 931, reversed Groner v. United States (C.C.A.) 73 F.(2d) 126; State ex rel. Gillespie v. Carlton, 103 Fla. 810, 138 So. 612; State ex rel. DuPont Ball v. Livingston, 104 Fla. 33, 139 So. 360; State ex rel. New York Life Ins. Co. v. Curry, 104 Fla. 242, 139 So. 891; State v. Sholtz, 114 Fla. 135, 154 So. 871; State v. State Board of Administration, 115 Fla. 753, 154 So. 876, 156 So. 15; State v. State Board of Administration, 115 Fla. 806, 156 So. 130; (only asked pro rata share in this case); Sholtz v. State, 121 Fla. 477, 163 So. 854; Sholtz v. State, 122 Fla. 238, 165 So. 34; Sholtz v. State, 122 Fla. 249, 165 So. 39; State ex rel. Bliss v. Grand River Drainage Dist., 330 Mo. 360, 49 S.W.(2d) 121; (overruled in part, at least, by State v. Little River Drainage District, 334 Mo. 753, 68 S.W.(2d) 671, and State v. Duncan, 334 Mo. 733, 68 S.W.(2d) 679); Hook v. German-American Bank, 152 App.Div. 253, 136 N.Y.S. 1019, affirmed 211 N.Y. 508, 105 N.E. 1087. In the following cases the point was not so clearly raised, but the decision indicates a full payment in spite of the existence of other creditors and a possible insufficiency in the fund: Galena v. Amy, 5 Wall. 705, 18 L.Ed. 560; Shelley v. St. Charles County Court (C.C.) 21 F. 699; Mayor, etc. of City of New Orleans v. United States (C.C.A.) 49 F. 40; Meyer v. Porter, 65 Cal. 67, 2 P. 884; Meyer v. Widber, 126 Cal. 252, 58 P. 532; Ward v. Piper, 69 Kan. 773, 77 P. 699; State ex rel. Marchand v. New Orleans, 37 La. Ann. 13; State v. Taylor, 125 Neb. 228, 249 N.W. 586, 587; State v. Greenbrier County Court, 93 W.Va. 481, 117 S.E. 135; State ex rel. Smith v. Hall, 94 W.Va. 400, 119 S.E. 166.

[3] Moran v. State, 111 Fla. 429, 149 So. 477; Jewell v. City of Superior (C.C.A.) 135 F. 19, certiorari denied 198 U.S. 583, 25 S.Ct. 801, 49 L.Ed. 1173; Norris v. Montezuma Valley Irr. Dist. (C.C.A.) 248 F. 369, certiorari denied 248 U.S. 569, 39 S.Ct. 10, 63 L.Ed. 425; Rohwer v. Gibson, 126 Cal.App. 707, 14 P.(2d) 1051; Thomas v. Patterson, 61 Colo. 547, 159 P. 34; People ex rel. Decker v. City of Park Ridge, 275 Ill.App. 97; People v. Treasurer of Monroe County, 191 N.Y. 15, 83 N.E. 661; Rothschild v. Village of Calumet Park, 350 Ill. 330, 183 N.E. 337. Other cases, not directly in point, but indicating a similar result, include Sibley v. Mobile, Fed.Cas. No. 12,829; United States v. Macon County Court Justices and Treasurer (C.C.) 75 F. 259; and State ex rel. Howard v. Burbank, 22 La.Ann. 298. Compare State v. Little River Drainage District, 334 Mo. 753, 68 S.W.(2d) 671, and State v. Duncan, 334 Mo. 733, 68 S.W.(2d) 679, followed by Groner v. United States (C.C.A.) 73 F.(2d) 126, and State v. Mulliniks (Mo. App.) 74 S.W.(2d) 93. Vanderpeol v. Mt. Ephraim, 111 N.J.Law, 423, 168 A. 575, 89 A.L.R. 862; Gerard v. State, 110 Fla. 307, 148 So. 552.