# DEFOE v. TOWN OF RUTHERFORDTON.
## No. 4806.

Circuit Court of Appeals, Fourth Circuit.
Sept. 4, 1941.

Charles A. Hines, of Greensboro, N.C. (Norman A. Boren, of Greensboro, N.C., Richard M. Maxwell, of Charlotte, N.C., and Hines & Boren, of Greensboro, N.C., on the brief), for appellant.

Clyde R. Hoey, of Shelby, N.C. (Edwards & Edwards and Woodrow Jones, all of Rutherfordton, N.C., on the brief), for appellee.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from an order reducing the amount directed to be paid in a writ of mandamus. On April 22, 1938, the plaintiff, Frederick W. DeFoe, obtained judgment against the town of Rutherfordton, N.C. in the sum of $5,301.25. On August 13, 1938, upon hearing duly had, a peremptory writ of mandamus was entered directing the town to pay the judgment in the following manner, viz.: $1,000 on or before September 1, 1938, $1,425 on or before the 1st day of September in each of the years 1939, 1940 and 1941, and the remainder on or before September 1, 1942. The writ directed, also, that the officers of the town levy and collect a sufficient tax to make these payments. The payments were made as directed for the years 1938 and 1939, but on May 8, 1940, the town filed a petition in the cause asking for a modification of the terms of the writ of mandamus, on the ground that its financial condition had changed for the worse and that it had formulated a refinancing plan for all of its indebtedness which it was offering for the approval of its creditors. The court below found that the town was less able to meet its obligations than at the time of the issuance of the writ and reduced to $600 per year the payments ordered. From the order making this reduction, plaintiff has appealed.

There is little dispute as to the basic facts in the case. The assessed value of the property of the town is $1,535,000, which is $25,000 in excess of what it was in 1938. The bonded indebtedness has been reduced from $745,000 to $440,000 during this period, as the result of purchase of bonds at a great discount with funds derived from a sale of the town's power plant. From 1935 to 1939 a tax of only 10 cents on the $100 valuation of property was levied annually for debt service. In 1940 the tax levied for debt service was 84 cents and a fund of $6,842.35 was derived therefrom; but the town refuses to apply any part thereof to payment of plaintiff's judgment on the ground that the tax was levied and collected to comply with the provisions of the financing plan offered to its creditors. This financing plan has been rejected by creditors, however, and no reason appears why the fund should not be applied upon indebtedness, as it was levied for "debt service". In 1940, the tax levied by the town for operating expenses was $1.16, which made the total tax rate of the town $2 on the $100 valuation of property, the county tax rate for that year being $1.50. Judgments in the aggregate of $18,572.75 have been obtained against the town and $135,000 of its bonded indebtedness is past due. It has been notified by the State Board of Health that an additional sewage disposal plant is necessary in the interest of the public health, and the estimated cost of such plant is $60,000, but it has applied for a government loan to meet this expenditure.

There is no finding, and no basis for finding, that the town cannot raise sufficient money by a tax levy to meet the payments required by the writ of mandamus in addition to ordinary governmental expenses. The finding is merely that the town is "less able" to meet its obligations, and that to require the payments ordered by the writ of mandamus would be "oppressive and highly injurious" to the town, and

that the payment of $600 would be "reasonable, fair and equitable."

We think it clear that the question as to the propriety of the order reducing the amount payable under the writ of mandamus is to be determined by the law of North Carolina. In one Circuit it has been held that, under the doctrine of Erie R. Co. v. Tompkins 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the law applicable in proceedings in the nature of mandamus for the collection of judgments is the law of the state. Barker et al. v. Borough of Fort Lee, 3 Cir. 104 F.2d 275. The case here involves both the substantive right of the holder of an overdue municipal bond to be paid and also the procedural right to an order in the nature of a writ of mandamus to enforce his claim. Both of these rights are established by decision of the Supreme Court of North Carolina, which are binding on the federal courts. The doctrine of Erie R. Co. v. Tompkins requires us to recognize the substantive right thus established, and Rule of Civil Procedure 69(a) requires us to apply the state procedure relating to mandamus. 28 U.S.C.A. following section 723c. Rule 69(a) provides:

"The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable."

The old writ of mandamus is abolished by the rules of Civil Procedure. Rule 81(b). Proceedings in the nature of mandamus for the collection of judgments are clearly "proceedings supplementary to and in aid of a judgment", within the meaning of the quoted provision of Rule 69(a), as to which the practice and procedure of the state is required to be followed.

The North Carolina law applicable is well summarized in the recent case of Maryland Casualty Co. v. Leland, 214 N.C. 235, 199 S.E. 7, 9, as follows:

"Such proceedings are not proceedings in equity. [Cases]. Under our own practice, mandamus is put to statutory uses, and both by custom and authority has been deprived of much of its common law character. The writ is no longer, as at common law, a high prerogative writ; [cases] and the Court has no discretion to refuse it when it is sought to enforce a clear legal right to which it is appropriate. [Cases]. Mandamus is as much an instrument of enforcement at law as it is an aid in equity, and, as sought here, may be considered the equivalent of execution. [Cases].

"Inhibitions against its use will be found to arise more out of the nature of the subjects to which it is applied, and the powers and functions of officers upon which it is intended to operate, rather than anything inherent in the writ. Of course, it will not issue to require a levy of taxes beyond the constitutional or statutory limitations, where such limitations exist; and even within these limits it may be accepted as established law that private right must be subordinated to public necessity in the sense that needs of government, economically administered, have a prior demand on the proceeds of taxation. Cromartie v. Bladen County Com'rs, 85 N.C. 211. So the writ will not be issued when the effect will be to divert the funds from necessary governmental uses to the satisfaction of a private claim. But such diversion must appear as the immediate consequence of exhaustion of revenues available for governmental purposes and of the power to tax. The Court cannot consider speculative consequences, to be brought about by an increased burden of taxation, the difficulty of collecting the taxes and consequent foreclosure, and the diminution of tax revenues from similar causes which eventually might come about and defeat government. Where there is a margin between the needs of government, as above defined, and the limit of authority to levy the tax, there seems to be no question that the writ must issue. Cromartie v. Bladen County Com'rs, supra.

\*     \*     \*     \*     \*

"It follows that mere amelioration of the burden of taxation is not a proper consideration. The unfortunate condition of the town in that respect might possibly have been foreseen and prevented, since it is difficult to see how a town of 558 inhabitants could incur a bonded debt of $330,000 without the sanction of its citizens at the polls.

"Nor have we any discretion to refuse the writ on the ground that it might work a preference of plaintiff's claim over those of other creditors. Whatever preference may ensue upon the issuance of the writ began when plaintiff brought suit on its claim, and may be referred to its more

diligent resort to a remedy open to all creditors alike." (Italics supplied).

The following propositions seem well settled by this decision as the law of North Carolina: (1) that the holder of a judgment against a municipality is entitled to a writ in the nature of mandamus as a matter of right and not as a matter of grace to enforce the payment of the judgment; (2) that, where there is no statutory or constitutional limit on taxation involved, the only limit on the right is that it be subordinated to public necessity in the sense that needs of government, economically administered, have a prior demand on the proceeds of taxation; (3) that where there is a margin between the needs of government, as above defined, and the limit of authority to tax, the writ must issue; and (4) that there is no discretion to refuse the writ on the ground that it may result in a preference. It is clear, therefore, that in granting an order in the nature of the writ of mandamus, the court may not spread out the payments over a period of years except in so far as this may be necessary to avoid constitutional or statutory tax limits or to avoid encroachment upon revenues necessary for governmental purposes; for the court may not arbitrarily accord to the municipality what is in effect a moratorium for the payment of its obligations or deny relief to which plaintiff is entitled as a matter of right.

■ Assuming without deciding that the spread in the payments contained in the original order of the court below was justified, we find nothing in the record justifying the further spread granted by the order appealed from. An annual tax sufficient to meet the payments originally ordered would amount to only about ten cents on the one hundred dollars valuation of property, and certainly the town could levy such tax without encroaching on revenues necessary to the carrying on of its governmental functions. No constitutional or statutory limitation forbade the levying of such a tax; and the record shows that a tax of 84 cents was laid for "debt service" in the year 1940, from which a fund of $6,842.35 had been derived and was in the town treasury. The town, of course, had no right to exhaust its power of taxation for the purpose of creating a fund for compromising its debts, in disregard of the rights of creditors whose claims it had been expressly ordered to pay; and whatever may have been the status, prior to the rejection of the offer of compromise, of the funds raised by the 84 cent levy, there can be no reason, since the rejection of that offer, why such funds may not be used by the town for the payment of debts generally including the judgment of plaintiff. At all events, it does not appear that the town's power of taxation has been exhausted; and we see no reason why an additional tax may not be levied, if necessary, to comply with the court's order.

■ We agree that the court may modify an order in the nature of a writ of mandamus, where in the light of subsequent events its commands have become improper, as where they would conflict with constitutional or statutory limits of taxation or would interfere with the support of necessary governmental functions. But manifestly a modification is not justified where its effect is to deny to a party the relief to which he is entitled as a matter of right.

■ In Town of Columbus v. Barringer, 4 Cir., 85 F.2d 908 and Carteret County v. Sovereign Camp Woodmen of the World, 4 Cir., 78 F.2d 337, we gave consideration to the desirability of pro rata distribution among the creditors of insolvent municipalities; but in view of the rule laid down in Maryland Casualty Co. v. Leland, supra, there is no room for such consideration under the law of North Carolina. A burdened municipality must either pay up to the extent possible under its constitutional or statutory powers of taxation, or invoke the provisions of the municipal bankruptcy act. The fact that the North Carolina rule enables the diligent creditor to obtain preferential treatment will probably aid the municipality, in a proper case, to acquire the requisite support of creditors in its effort to invoke the provisions of the bankruptcy act.

For the reasons stated, the order appealed from will be reversed and the cause will be remanded with direction to reinstate the terms of the original order and for such other and further proceedings as may not be inconsistent herewith.

Reversed.